GRACIA MARÍA ARRARÁS, como madre con patria potestad en representación de sus menores hijos JOSÉ MARÍA, MARÍA DEL CORO y MANUEL ENRIQUE ARZUAGA ARRARÁS, demandante y apelante, *v.* JOSÉ MARÍA ARZUAGA, demandado y apelado.

Núm. 7657.—*Sometido:* Junio 2, 1938. *Resuelto:* Julio 28, 1938.

*Dexter & Dexter,* abogados de los apelantes; *Gabriel de la Haba y Damián Monserrat, Jr.,* abogados del apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Gracia María Arrarás alega substancialmente en la demanda que es madre con patria potestad sobre sus menores hijos José María, María del Coro y Manuel Enrique Arzuaga Arrarás, y que el demandado es vecino de San Sebastián, República Española. Que el día 19 de marzo de 1925 contrajo matrimonio con Juan B. Arzuaga, hijo legítimo del demandado; que durante ese matrimonio hubo a los tres menores demandantes; que dicho matrimonio quedó disuelto por resolución de fecha 17 de mayo de 1935, obteniendo ella la custodia y patria potestad de sus hijos; que dicho Juan B. Arzuaga partió para Venezuela con más de un año de

anterioridad a la fecha del decreto de divorcio, y de allí a España, donde reside en la actualidad, dejándola a ella y a sus hijos menores en el mayor desamparo; que dicho Juan B. Arzuaga no tiene bienes en Puerto Rico, y según información y creencia, tampoco los tiene en España, donde tiene propósito de residir definitivamente; que ella carece de recursos y medios necesarios para el sustento y educación de los demandantes que ya cursan estudios en escuelas particulares de Mayagüez; que el demandado es hombre de gran fortuna, con acciones y valores a su nombre en Puerto Rico, quien debe ser obligado a pasarle $100 mensuales a cada uno de sus nietos, o sea un total mensual de $300, que es una suma justa y razonable habida cuenta de la posición social de los demandantes y considerando la fortuna del demandado. La demanda está jurada por Gracia María Arrarás.

En aseguramiento de sentencia los demandantes solicitaron el embargo, con prohibición de enajenar, de las siguientes acciones propiedad del demandado en la corporación del país denominada Central Cambalache, Inc., todas dichas acciones de un valor total a la par de $24,520:

```
"   5       acciones con el número 425
"  12       acciones con el número 729
"   1       acción   con el número 431
"       2/10 acción   con el número  64
"227        acciones con el número 129
           _____
"245-2/10 acciones."
```

El 27 de mayo de 1937 la corte de distrito, previa la prestación de una fianza hasta la suma de $1,000 a favor del demandado, decretó "el embargo por su valor total de todas y cada una de las acciones que tenga a su nombre el demandado en los libros de la Central Cambalache, Inc.," prohibió su enajenación y ordenó la notificación de la orden de embargo al presidente o funcionario de la Central Cambalache, Inc., encargado de los libros de acciones.

En 27 de mayo los demandantes prestaron la fianza requerida y el secretario de la corte *a quo* expidió un emplazamiento que el márshal devolvió sin notificar por residir en España el demandado y no en Puerto Rico. Al día siguiente el secretario expidió mandamiento de embargo. El certificado de diligenciamiento del márshal, con relación a este mandamiento, dice textualmente así:

"CERTIFICADO DE DILIGENCIAMIENTO DEL MÁRSHAL

"CERTIFICO: Que recibí el presente mandamiento el día 28 de mayo de 1937 a la una y media de la tarde y que cumplimenté el mismo el día 28 de mayo de 1937 a las 2:30 de la tarde, trasladándome al barrio Cambalache de Arecibo, Puerto Rico, sitio donde radica la Central Cambalache, Inc., embargando todas y cada una de las acciones que pudiera tener a su nombre el demandado en este caso en los libros de la mencionada corporación. Que notifiqué, personalmente, al Sr. José Matienzo, Presidente de la Central Cambalache, Inc., para que dicho funcionario tome las notas correspondientes en los libros de acciones de dicha corporación, haciéndole constar del embargo trabado en este caso. Que apercibí a dicho señor en su carácter ya expresado, prohibiéndole a la vez que ejecute en los libros de dicha corporación venta, cesión o traspaso alguno de las acciones que en dicha corporación tenga el demandado en este caso, sin autorización expresa de la Corte. Que dejé en poder de dicho señor en su carácter ya expresado, copia de este mandamiento.

"Arecibo, P. R., 28 de mayo del 1937.

FELIPE CHÉVERE,
Sub-Márshal de la Corte de Distrito, actuando en representación del Sr. Thomas Méndez, márshal."

El día primero de junio los demandantes solicitaron la citación del demandado por edictos y así fué ordenado el día 5 de ese mismo mes. Hay constancia de que los edictos fueron publicados los días 7, 15, 21 y 30 de junio y 7 de julio de 1937.

El 17 de agosto, 1937, el demandado compareció con el solo y único objeto de atacar la validez de la citación por edictos y la jurisdicción de la corte y alegó:

"1. Que la orden de esta Corte de fecha 5 de junio de 1937, disponiendo la citación del demandado por edictos, es nula y sin valor alguno por los siguientes fundamentos:

"(a) Que dicha orden fué expedida a solicitud de uno de los abogados de la demandante mediante una moción jurada en la cual no se alegan motivos o razones de mérito para la expedición de la citación mediante edictos y cuyo juramento a la misma es nulo y carece de valor alguno por estar en contravención a las disposiciones de la ley sobre la materia.

"(b) Porque dicha orden disponiendo la citación por edictos no se funda en una declaración jurada o *affidavit* de mérito que debe acompañarse a la moción solicitando la citación por edictos.

"(c) Que no obstante alegarse en la demanda jurada y en la moción solicitando citación por edictos que la residencia del demandado era la de San Sebastián, España, la Corte en su citada orden de 5 de junio de 1937 no dispuso que se dirigiera al demandado por correo una copia de la citación y de la demanda al lugar de su residencia en contravención a lo que dispone la Ley de Enjuiciamiento Civil vigente.

"2. Que la Corte no adquirió jurisdicción sobre el demandado para poder ordenar su citación mediante la publicación de edictos, no sólo por lo que anteriormente se alega sino que también por las siguientes razones:

"(a) Que el embargo trabado por la parte demandante sobre las acciones que alega la parte demandante son propiedad del demandado en la corporación doméstica Central Cambalache es nulo y no tiene valor ni efecto alguno por no haberse embargado los títulos respectivos de dichas acciones y haberse tomado posesión física de los mismos por el márshal.

"(b) Que siendo el demandado según se alega un residente de la ciudad de San Sebastián, España, el *situs* de dichas acciones por considerarse bienes muebles es el lugar de la residencia de su propietario, no pudiendo por lo tanto embargarse los derechos del demandado en dicha corporación Central Cambalache por no radicar la propiedad a embargarse dentro de la Isla de Puerto Rico.

"(c) Que el mencionado embargo practicado por la parte demandante no procede en una acción de alimentos en la cual las pensiones alimenticias que se reclaman no están vencidas y no estaban a la fecha de verificarse el embargo, y no estar sujetos los bienes del alegado alimentante a ningún gravamen para garantizar pensiones alimenticias futuras, no pudiendo por lo tanto sujetarse sus bienes

mediante un embargo al cumplimiento de obligaciones no determinadas, futuras y no vencidas."

El 20 de agosto radicaron los demandantes declaración jurada de uno de sus abogados haciendo constar que en 10 de junio de 1937 enviaron por correo al demandado copia de la demanda y del emplazamiento, y en 13 de septiembre de igual año, una enmienda al certificado de diligenciamiento del márshal en relación con el mandamiento de embargo, que lee así:

"Yo, Felipe Chévere, Sub-Márshal de la Corte de Distrito de Arecibo, Puerto Rico,

"CERTIFICO: Que con fecha 28 de mayo de 1937 expedí un certificado de diligenciamiento en cumplimiento de un mandamiento de embargo expedido en el caso de epígrafe por la Corte de Distrito del Distrito Judicial de San Juan, Puerto Rico, de fecha 28 de mayo de 1937; que en el certificado de diligenciamiento que expedí hice constar que había embargado 'todas y cada una de las acciones que pudiera tener a su nombre el demandado en este caso en los libros de la mencionada corporación.'

"Que por el presente enmiendo el citado certificado de diligenciamiento por mí expedido, en el sentido de añadir al mismo y certificar también que las acciones expuestas que embargué fueron las siguientes:

| | | |
|---|---|---|
| " 5 | acciones con el número | 425 |
| " 12 | acciones con el número | 729 |
| " 1 | acción con el número | 431 |
| " | 2/10 de acción con el número | 64 |
| "227 | acciones con el número | 129 |
| | | |
| "245 | acciones y 2/10 de acción. | |

"Y para que así conste expido la presente enmienda al citado diligenciamiento por mí expedido en el caso de epígrafe en Arecibo, P. R., a 3 de septiembre, 1937.

FELIPE CHÉVERE,
Sub-Márshal de la Corte de Distrito
de Arecibo, P. R."

Por último, en 8 de octubre de 1937, los demandantes radicaron una enmienda a la demanda en que alegan que su

abuelo materno murió hace 15 años dejando bienes escasamente suficientes para cubrir las necesidades de su viuda y tres hijos menores, y que los únicos bienes con que cuenta la abuela materna son unas fincas sujetas a gravámenes hipotecarios cuyas rentas, luego del pago de intereses y contribuciones, tan sólo dan para satisfacer sus gastos y los de la madre y una tía de los demandantes.

En 9 de noviembre de 1937 la corte inferior dictó la resolución que es objeto de esta apelación. En ella discute y resuelve a favor de los demandantes cada una de las cuestiones suscitadas por el demandado en la moción solicitando la nulidad de la citación por edictos (supra). No obstante, por fundamentos que el demandado no adujo en su moción, llegó a la conclusión de que el embargo fué ineficaz, y la orden de citación por edictos dictada sin jurisdicción. En su consecuencia anuló la referida orden de citación por edictos, sin perjuicio de que se trabase un embargo válido y una vez trabado el mismo, se solicitase nuevamente la correspondiente orden para citar por edictos al demandado. Dice así la resolución, en lo que es pertinente:

"A pesar de la jurisdicción de la Corte para dictar la orden de embargo, tenemos que llegar a la conclusión de que el referido embargo es ineficaz y que una sentencia dictada a base del mismo sería *coram non judice*.

"El Márshal de la Corte de Distrito de Arecibo al personarse en las oficinas de la Central Cambalache, no empezó por cerciorarse de que el demandado tuviera acciones de dicha Central y una vez determinada la existencia de dichas acciones trabar embargo sobre el número específico de las mismas poseídas por el demandado. Por el contrario, el Márshal se limitó a trabar embargo sobre las acciones que pudiera tener el demandado, y así lo hizo constar en el diligenciamiento (*return*) de la orden de embargo.

"Exige la jurisprudencia que para que en tales casos pueda ordenarse la citación por edictos, es necesario que antes de dictar tal orden se haya trabado embargo sobre bienes de la propiedad del demandado. *Cosme v. Santi González,* 37 D.P.R. 763, 766.

"¿Cómo podía la Corte determinar si en efecto se habían embargado bienes del demandado, o si por el contrario la tentativa del

Márshal no fué efectiva por resultar a la postre que el demandado no tenía el interés que se le suponía en la indicada corporación?

"El hecho de que el Márshal luego de publicados los edictos y después de comparecer especialmente el demandado, enmiende su certificado (*return*) expresando las acciones que embargó, es a nuestro juicio inmaterial.

" 'Es necesario demostrar, pues, debidamente que la orden decretando el embargo quedó cumplida, que el mandamiento surtió sus efectos, que el embargo fué una realidad, antes de que la Corte actúe, para que pueda hacerlo de una manera eficaz. De otro modo, todo el edificio levantado, caerá, como cayó en este caso, por su base.' *Cosme* v. *Santi González,* supra, pág. 761.

"La enmienda al certificado de diligenciamiento que suscribió el Márshal de Arecibo el día 3 de septiembre, no convalida a nuestro juicio el embargo que no se trabó sobre una propiedad específica, pues dicho certificado enmendado no hace más que hacer una relación de las acciones que résultó tener el demandado en la Central Cambalache; pero en ningún momento aparece que el Márshal trabase embargo sobre estas acciones en particular y que así se lo notificase al representante de la corporación.''

Los demandantes apelaron, y aunque tanto ellos como el demandado discuten en sus alegatos respectivos las diferentes cuestiones levantadas en la moción solicitando la nulidad de la citación por edictos, entendemos que lo único que está ante nos es la suficiencia legal de los fundamentos que sirvieron de base a la corte inferior para declarar ineficaz el embargo, y no las otras cuestiones levantadas por el demandado, que fueron resueltas todas a favor de los demandantes y consentidas por el demandado al no apelar.

Estamos de acuerdo con la corte inferior en que "en una acción personal en que el demandado reside fuera de los límites territoriales del Estado, la citación por edictos no surte efecto a menos que antes de ordenarse la publicación se embarguen bienes del demandado radicados dentro del Estado en que radica la corte.''

"Excepto en aquellos casos que afecten el *status* personal del demandante, y aquéllos en que tal forma de citar pueda considerarse que ha sido previamente consentida, en la forma que después se

mencionará, el método sustituto de citación por edictos, permitido por las leyes de Oregon y por estatutos similares de otros Estados, cuando se entabla una acción contra un no residente, tan sólo es efectivo cuando en conexión con la citación al comenzarse el pleito, alguna propiedad dentro del Estado se pone bajo el control de la corte y se le sujeta a su disposición por medios adaptados a ese propósito, o cuando la sentencia se persigue con el objeto de afectar la propiedad o para lograr algún interés en relación con ella; en otras palabras, cuando se trata de una acción de la naturaleza de un procedimiento *in rem.*'' *Pennoyer* v. *Neff*, 95 U. S. 714, 733; 24 L. Ed. 565.

La jurisdicción en estos casos emana del poder soberano del Estado sobre toda propiedad radicada dentro de sus límites territoriales. Si no hubiere alguna de que fuere propietario el demandado no residente, los tribunales de ese Estado carecerían de base sobre qué actuar.

''...Es por virtud de la jurisdicción del Estado sobre la propiedad de un no residente situada dentro de sus límites, que sus tribunales pueden investigar las obligaciones de los no residentes hacia sus ciudadanos, limitada dicha investigación tan sólo para lo que sea necesario para controlar la disposición de la propiedad. Si el no residente no tiene propiedad en el Estado, no hay nada sobre lo cual pueda el tribunal hacer adjudicación.'' *Pennoyer* v. *Neff*, supra, 723.

Pasaremos por alto sin resolverla la cuestión de si el diligenciamiento original era o no prueba suficiente de que el márshal realmente trabara un embargo sobre todas las acciones que el demandado tenía registradas a su nombre en los libros de acciones de la Central Cambalache. Creemos innecesario resolver dicha cuestión, porque aun asumiendo que el diligenciamiento original fuera defectuoso, de los autos consta que cerca de dos meses antes de dictar la corte su resolución del día 9 de noviembre de 1937, esto es en 13 de septiembre de ese año, el márshal radicó una enmienda al certificado de diligenciamiento original. En este certificado enmendado añade y certifica que embargó las acciones que en él se relacionan. La duda que cabía antes sobre si

el demandado era o no accionista de la Central Cambalache, Inc., desapareció. Ya no se trataba de un embargo sobre "...acciones *que pudiera tener*...el demandado...", sino de 245 acciones y 2/10 de otra, que se afirma tenía, y había embargado antes. No obstante, la corte creyó que ese certificado enmendado era insuficiente para conferirle jurisdicción, por el hecho de haber sido radicado después de publicados los edictos y de haber comparecido especialmente el demandado.

Olvida la corte, sin embargo, que lo que le da jurisdicción no es el certificado de diligenciamiento (*return*) que hace el márshal, sino el embargo que en realidad haya trabado.

"No hay controversia en cuanto a que la forma del diligenciamiento es defectuosa y los demandados admiten por lo menos el no haberse consignado debidamente la edad del que practicó la diligencia de la citación ni tampoco que no tuviera interés en el pleito, pero los demandados y apelados fundándose seguramente en la jurisprudencia sentada en los casos de *Buonomo* v. *Sucesión Juncos,* 28 D.P.R. 409 y *López* v. *Quiñones,* 30 D.P.R. 342, presentaron prueba *aliunde* para demostrar que los requisitos omitidos en el diligenciamiento habían sido cumplidos al tiempo de hacerse las citaciones a los demandados, ahora demandantes, llenando todos los requisitos legales que exige el artículo 92 de la Ley de Enjuiciamiento Civil, sección 5076, Compilación de 1911." *Ortiz* v. *San Miguel,* 34 D.P.R. 228, 229.

El certificado enmendado demuestra claramente que las acciones estuvieron siempre embargadas, pero que el márshal omitió los datos que así lo demostraban en el diligenciamiento original. Y como esos datos los tuvo la corte inferior ante sí por medio del diligenciamiento enmendado antes de dictar la resolución que es objeto de esta apelación, creemos que erró al no darle efecto legal a dicho diligenciamiento enmendado, especialmente cuando los hechos en el mismo expuestos no fueron en manera alguna controvertidos por el demandado.

"Si el diligenciamiento de un emplazamiento o de cualquier otro auto que tenga por objeto conferir jurisdicción a la corte sobre la

persona del demandado, es omitido o hecho incorrectamente, pero los hechos requeridos para dar a la corte jurisdicción existieron realmente, el peso de las autoridades al presente le permite al oficial corregir o suministrar el diligenciamiento hasta que diga la verdad, aunque debido a tal corrección la sentencia aparentemente nula se convierta en válida.'' Freeman on Judgments (4th edition) section 89-*b*, citada en *Cunningham* v. *Spokane, etc. Co.,* 72 Am. St. Rep. 113, 115.

Que la corte tenía facultades para permitir la enmienda al certificado de diligenciamiento original, surge claramente de los artículos 7, 140 y 142 del Código de Enjuiciamiento Civil:

"Art. 7.—Toda corte tiene poder:

" .         .         .         .         .         .         .         .

"(8) Para inspeccionar y corregir sus providencias y órdenes con el fin de ajustarlas a la ley y a la justicia.

"Art. 140.—Podrá la corte, en bien de la justicia, y en los términos que fuesen adecuados, permitir a una de las partes enmendar cualquier alegación o procedimiento, bien añadiendo o eliminando el nombre de alguna parte o corrigiendo un error en el nombre de la misma, o en cualquier otro particular, y en igual forma, prorrogar el término para la contestación o excepción previa. La corte puede también, a su arbitrio, después de notificada la parte contraria, permitir en la forma que estimare justa, una enmienda a cualquier alegación o procedimiento en otros particulares, y puede, en igual forma, permitir que se formule una contestación después del término prescrito por este Código, y también eximir a alguna persona o a sus representantes legales, de los efectos de una sentencia, orden u otro procedimiento que se hubiese dictado contra ella, por causa de equivocación, inadvertencia, sorpresa o excusable negligencia;....

"Art. 142.—En cualquier estado de un pleito la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no afecten a lo esencial de los derechos de las partes, y no se revocará o invalidará ningún fallo por razón de dicho error o defecto."

La jurisprudencia es al mismo efecto. En 50 C. J., pág. 606, sección 360, se resume así:

"El diligenciamiento de emplazamiento de un oficial puede, como regla general, ser enmendado para corregir defectos en él o para

ajustarlo a la verdad, y a los requerimientos estatutarios, cuando éstos existan. El derecho a enmendar es un derecho oriundo de la ley común y no depende del estatuto, aunque frecuentemente se confiere por estatuto. Igualmente enmendables son los *affidavits* de citación hechos por personas privadas, prueba de citación por edictos, *affidavits* de citaciones hechas a personas no residentes por oficiales no residentes, y notificaciones de citaciones. No se permitirá un proyecto de enmienda, si incierto, y el demandado puede controvertir la verdad del hecho que se trate de introducir en el diligenciamiento.''

Si bien es verdad que del diligenciamiento original no aparece el hecho cierto del embargo, también lo es, según consta del diligenciamiento enmendado, que en realidad fué trabado sobre las acciones del demandado que en este último se enumeran. Y como quiera que el diligenciamiento no es más que la prueba de un hecho, que en el caso de autos ocurrió, la corte inferior pudo y debió, a nuestro modo de ver, darle al documento enmendatorio todo el valor probatorio que tenía.

''...La jurisdicción no dependía de la prueba de la citación, sino del hecho de haberse efectuado dicha citación. Cuando los *affidavits* que acreditaban que la citación había sido puesta por correo fueron radicados ellos sostenían el decreto tan plenamente como si éste formara parte del récord antes de su registro. *Herman* v. *Santee,* 103 Cal. 519, 42 Am. St. Rep. 145, 37 Pac. 509; *Heinlen* v. *Heilbron,* 94 Cal. 636, 30 Pac. 8; *La Fetra* v. *Gleason,* 101 Cal. 246, 35 Pac. 765; *Bank of Orland* v. *Dodson,* 127 Cal. 208, 78 Am. St. Rep. 42, 59 Pac. 584.'' *Lindley* v. *Lindley,* 49 Cal. App. 631, 633; 194 Pac. 85. '

''...El diligenciamiento de la citación puede ser formal o informal, perfecto o imperfecto. Sin embargo, si la citación en realidad se hizo, la corte adquirió jurisdicción de la persona del demandado. Así pues en *In re Newman,* 75 Cal. 220, 7 Am. St. Rep. 146, se dijo: 'Es el hecho de la notificación lo que da a la corte jurisdicción, y no la prueba de haberse efectuado tal cosa'.

''La declaración jurada enmendada sobre el diligenciamiento, que la corte autorizó se radicara, estaba correcta en todo sentido, y demostraba que el apelante fué debidamente notificado con copia del emplazamiento y la demanda. Ninguno de los hechos que se hacen constar en la declaración jurada han sido controvertidos, y

debe resolverse, en su consecuencia, que desde el momento en que se hizo la notificación la corte adquirió jurisdicción de las partes en el litigio." *Herman* v. *Santee*, 42 Am. St. Rep. 145, 147.

"...La corte declara en efecto que no es la notificación del procedimiento lo que da a las cortes jurisdicción, sino la prueba de tal notificación; que si la prueba es defectuosa no importa entonces que la notificación fuera perfecta; y siendo la prueba imperfecta, no es posible sostener la sentencia en forma alguna, demostrando los hechos que rodean la notificación del procedimiento conforme éstos existían al dictarse la sentencia. Creemos que la ley es precisamente lo contrario de todo esto. Es el hecho de la notificación del procedimiento lo que da a la corte jurisdicción, y es práctica familiar en el Estado de California, así como donde quiera, cuando falta la prueba de tal notificación o ésta es defectuosa, permitir que la misma sea enmendada o complementada. En este caso la corte dice que la prueba, al ser así enmendada o complementada, 'no surtiría el efecto, por relación, de convalidar aquello que, al dictarse, era nulo.' Es cierto que no puede convalidar una cosa que era nula. Pero si el procedimiento fué notificado la sentencia jamás fué nula. Al complementarse y enmendarse la prueba de la notificación de un procedimiento, el objeto no es convalidar algo que era nulo, sino convalidar algo que era válido; en otras palabras, demostrar la verdadera naturaleza de la sentencia; que no es nula ni jamás lo fué, según podría inferirse en ausencia de prueba de la notificación, sino que es y siempre ha sido válida." Nota al caso de *Reinhart* v. *Lugo*, 21 Am. St. Rep. 52, 56.

Lo que el caso de *Pennoyer* v. *Neff*, supra, rechaza es que la jurisdicción de la corte se haga depender de hechos a comprobar *después de juzgada la causa y dictada la sentencia*.

"...Su jurisdicción a ese respecto no puede hacerse que dependa de hechos a ser determinados después que se ha juzgado la causa y dictado sentencia." *Pennoyer* v. *Neff*, supra, pág. 728.

Dice la corte inferior en el último párrafo de su resolución (véase supra) que "la enmienda al certificado de diligenciamiento...no convalida...el embargo...pues dicho certificado enmendado no hace más que hacer una relación de las acciones que resultó tener el demandado...pero en ningún momento

aparece que el márshal trabase embargo sobre estas acciones en particular. . .''

Opinamos que el diligenciamiento enmendado es claro en ese respecto. Dice el márshal: ''...que las acciones expuestas que *embargué* fueron las siguientes...'' No hay duda de que se trabó un embargo.

En el caso de autos la información omitida en el certificado de diligenciamiento original la tuvo la corte ante sí, como ya se ha dicho, cerca de dos meses antes de dictar la resolución del día 9 de noviembre de 1937, y apareciendo de ella como cuestión de hecho la realidad del embargo sobre determinadas acciones del demandado en la Central Cambalache, Inc., *procede que se revoque dicha resolución y que se devuelva el caso a la corte de su origen para procedimientos ulteriores no inconsistentes con los términos de esta opinión.*

El Juez Asociado Señor De Jesús no intervino.