AMADEO BARLETTA, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE MAYAGÜEZ, HON. ÁNGEL FIOL NEGRÓN, JUEZ, demandado; AMADEA ITALIA VIDAL, interventora.

Número 1968.
*Sometido:* 18 de febrero de 1953. *Resuelto:* 9 de marzo de 1953.

---

*Amador Ramírez Silva* y *Oscar Souffront,* abogados del peticionario; *Enrique Báez García,* abogado de la interventora, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinion del tribunal.

De los autos elevados a este Tribunal surge que Amadeo Barletta está domiciliado en la Habana, Cuba, conociéndose su dirección exacta en esa ciudad. Contra él interpuso la aquí interventora, Amadea Italia Vidal, una demanda de filiación, en la sección de Mayagüez del antiguo Tribunal de Distrito de Puerto Rico. El demandado Barletta no pudo ser localizado en Puerto Rico y, previo los procedimientos usuales, se publicaron los edictos correspondientes y por correo certificado se enviaron al demandado, a su dirección en la Calle Infanta, número 23(*e*) de la Habana, copias de la demanda y de los edictos.

Compareció el demandado en el tribunal de Mayagüez, por sus abogados, formulando una moción de desestimación de la demanda en la que alegaba que la demanda "no aduce hechos suficientes para determinar una causa de acción" y que el tribunal carecía de jurisdicción sobre la persona del demandado ya que, tratándose de una acción personal, y estando el demandado domiciliado fuera de Puerto Rico, él no había sido emplazado personalmente, sin haberse embargado bienes de su pertenencia en Puerto Rico.

El tribunal de Mayagüez dictó una resolución declarando sin lugar la moción de desestimación, resolviendo, de acuerdo

con el caso de *Orama et al* v. *Oyanguren*, 19 D.P.R. 828, que los requisitos de notificación personal y embargo previo de bienes no son aplicables a una acción de filiación. El demandado solicita de nosotros, en este recurso de *certiorari*, que anulemos tal resolución.

■■ Generalmente conocido es el caso de *Pennoyer* v. *Neff*, 95 U.S. 714. En él se resuelve que en una acción puramente personal, o sea, *in personam*, un tribunal carece de jurisdicción sobre un no-residente que no haya sido notificado personalmente de la acción, dentro de la jurisdicción, siendo absolutamente nula y *coram non judice* la sentencia que en dicha acción se dicte, por no haber adquirido el tribunal un poder efectivo sobre el demandado. Tal como se indica en dicho caso, la doctrina en él establecida no es aplicable a acciones o procedimientos *in rem* o *quasi in rem*, o sea, a aquellas acciones que envuelvan derechos o responsabilidades en cuanto a una propiedad específica localizada dentro de la jurisdicción estatal o territorial. Tampoco es aplicable la doctrina a aquellas acciones, aun personales, en que haya mediado un embargo de bienes, debiendo limitarse la efectividad de la sentencia al valor de tales bienes. Véase la anotación en 94 L. ed. 1167, en cuanto al desarrollo de la doctrina de *Pennoyer* v. *Neff*, supra, y véase 42 Am. Jur. 71. Véanse además los casos resueltos por este Tribunal de *Huete* v. *Teillard*, 17 D.P.R. 49; *Cosme* v. *Santi González*, 37 D.P.R. 763; *Wenonah Mil. Academy* v. *Antonsanti*, 40 D.P.R. 263 y *Arrarás* v. *Arzuaga*, 53 D.P.R. 713.

Ahora bien, en el propio caso de *Pennoyer* v. *Neff*, supra, se indica que la regla relativa a la necesidad de notificación personal de una persona domiciliada fuera del país, como condición jurisdiccional, no es aplicable a una acción que envuelva el *status* de una persona. En el caso de *Orama et al* v. *Oyanguren*, 19 D.P.R. 828, 831, se resuelve que en una acción cuyo propósito sea el de establecer el estado civil de una persona, o sea, en una acción de filiación contra una persona domiciliada fuera de Puerto Rico, como en el caso de autos, no es

necesario, para que nuestros tribunales adquieran jurisdicción o un poder judicial válido y efectivo, el que se haya notificado personalmente de la demanda al demandado no residente o el que se embarguen bienes de su pertenencia en Puerto Rico. Se dice lo siguiente en la opinión:

"La acción que al hijo corresponde para hacer declarar en virtud de pruebas quién sea su padre natural, es sin duda alguna un derecho personal suyo y por consiguiente, cuando el hijo está en posesión de tal derecho, debe ser regulado conforme a la ley bajo la cual fué adquirido, por lo que las cuestiones que conciernen al estado de la persona deben regirse por la ley del Estado de quien lo reclama. El estado civil de los ciudadanos debe regirse en todo por la ley de su país y sólo puede determinarse con arreglo a ella. En consecuencia, si bien es regla general que una corte no adquiere jurisdicción sobre personas no residentes por acciones personales, a menos que hayan sido notificadas personalmente de la demanda dentro del Estado o que en éste tenga bienes que hayan sido embargados, sin embargo, tal regla general no puede ser aplicada a los casos que se refieren al estado civil de la persona, cuyo carácter tiene la demanda de filiación, ya que siendo un derecho originado por la concepción y el nacimiento, no puede quedar a merced de que la persona a quien se atribuye la paternidad, o los representantes legales de su personalidad, se hayan ausentado del territorio de la persona con derecho al reconocimiento, dado que no en todos los países tal derecho es reconocido, ni admiten pruebas de reconocimiento, por entender que son contrarias al orden público y a las buenas costumbres tal como éstas las entienden. En este orden de ideas dice el Tribunal Supremo de los Estados Unidos en el caso de *Pennoyer* v. *Neff*, 95 U.S. 714, lo que sigue:

" 'Para evitar cualquiera errónea interpretación de los puntos de vista expuestos en esta opinión, consideramos oportuno observar que nuestras palabras no deben interpretarse en el sentido de sostener que un Estado no puede utilizar para determinar el *status* de uno de sus ciudadanos hacia una persona no residente, procedimientos que serían obligatorios dentro del Estado aunque seguidos sin haberse emplazado o notificado personalmente al ausente. La jurisdicción que un Estado posee para determinar el *status* civil y capacidades de sus habitantes, envuelve autoridad para prescribir las condiciones en que pueden iniciarse y proseguirse dentro del territorio de dicho Estado los procedi-

mientos relativos al *status* civil y capacidades de sus habitantes. El Estado, por ejemplo, tiene derecho absoluto para prescribir las condiciones en que ha de basarse la relación matrimonial entre sus propios ciudadanos y las causas por las cuales puede disolverse el matrimonio. Una parte culpable de actos que bajo las leyes del Estado autorizan la disolución del vínculo matrimonial, puede trasladarse a otro Estado donde no sea posible obtener el divorcio. En este caso, la parte agraviada no podría reclamar sus derechos en el Estado adonde se trasladó la otra parte, y si no estuviese autorizado para promover la acción en los tribunales de su propio domicilio, sin emplazar ni notificar personalmente a la parte ofensora, el agravio quedaría sin reparación.'

"Podemos, por tanto, concluir diciendo, que la corte del Estado de una persona que litiga por su estado civil tiene jurisdicción sobre demandados no residentes, aunque no hayan sido notificados personalmente dentro de él ni tengan bienes en el país, por lo que la corte inferior no cometió el primer error alegado en el recurso."

En el caso de *Fordham* v. *Marrero*, 273 Fed. 61, la Corte del Primer Circuito confirmó una sentencia nuestra (27 D.P.R. 708) y resolvió que un procedimiento en las cortes de Puerto Rico para establecer el *status* de un demandante como hijo natural reconocido es uno en que la sentencia que se dicte es *in rem* o *quasi in rem*, al igual que una sentencia de divorcio y que, por lo tanto, una notificación al demandado no residente hecha por edictos y por correo, de acuerdo con las leyes de Puerto Rico, es suficiente para darle jurisdicción a la corte sobre tal demandado, aun si este último no ha sido notificado personalmente. Véase además, sobre la naturaleza *in rem* de una acción de filiación, 1 Am. Jur. 436; *Combs* v. *Combs*, 60 S.W.2d 368; 1 C.J.S. 1149.

La regla sentada en *Orama et al* v. *Oyanguren*, supra, y en *Fordham* v. *Marrero*, supra, no ha sido modificada en forma alguna por este Tribunal. El demandado, y peticionario en este recurso, alega que en el caso de *Autoridad de Fuentes Fluviales* v. *Corte*, 65 D.P.R. 480, al interpretar la Regla 4(e) de las de Enjuiciamiento Civil, este Tribunal me-

noscabó la validez de la doctrina sentada en el caso de *Orama*. No estamos conformes. En el caso de *Autoridad de Fuentes Fluviales* v. *Corte*, supra, se trataba de una acción, puramente personal, de daños y perjuicios originados en un choque de automóviles. Este Tribunal señala que en virtud de los casos resueltos por este mismo Tribunal antes de la vigencia de las Reglas de Enjuiciamiento Civil, se había establecido que en una acción personal era necesario el embargo previo de bienes de un demandado quien, aunque domiciliado en Puerto Rico, no residía en nuestra isla al tiempo de la demanda, como condición precedente al emplazamiento sustituto y como condición previa a la adquisición de jurisdicción por nuestras cortes. Se había determinado que "el emplazamiento sustituto tenía que ensamblarse con un embargo de bienes en todos los pleitos '*in personam*' ". (Pág. 483, caso de *Autoridad de Fuentes Fluviales*, supra.) En *Milliken* v. *Meyer*, 311 U.S. 457, la Corte Suprema nacional resolvió que una ley que disponía el emplazamiento sustituto en una acción personal sobre un domiciliado de Wyoming fuera de dicho Estado, no infringía la cláusula del debido procedimiento de ley. En el caso citado de *Autoridad de Fuentes Fluviales* v. *Corte*, se resolvió que bajo la Regla 4(*e*) de Enjuiciamiento Civil el embargo previo era necesario en aquellos casos requeridos por la ley y que tal disposición le daba fuerza de ley a nuestras decisiones anteriores que requerían el embargo previo, no siendo aplicable el caso de *Milliken* por ser contrario a nuestra ley. Es obvio que la situación envuelta en el caso de *Autoridad de Fuentes Fluviales* es distinta a la que está sometida a nuestra consideración en el caso de autos. Se trataba, especialmente, de una acción puramente *in personam*. El propio tribunal señaló específicamente lo siguiente:

"Debe notarse que esta regla restrictiva no se ha aplicado a casos no estrictamente *in personam*—por ejemplo, una acción de divorcio la cual envuelve la determinación del *status* de las partes. Véase anotación en 147 A.L.R. 673."

En dicho caso de *Autoridad de Fuentes Fluviales* v. *Corte*, se indica que la Regla 4 (*e*) dispone que en los casos en que de acuerdo con la ley se requiera un embargo de bienes del demandado para que la corte tenga jurisdicción, no se ordenará la publicación mientras no se hubiere trabado dicho embargo. Se resuelve que la frase "de acuerdo con la ley" significa de acuerdo con las decisiones judiciales de este Tribunal vigentes en la fecha en que se aprobaron las Reglas de Enjuiciamiento Civil, y que, bajo esas decisiones se requería un embargo en acciones personales para que la corte pudiera adquirir jurisdicción sobre un ausente. En acciones de filiación las decisiones judiciales de este Tribunal eran al efecto de que no se requería un embargo previo de bienes del ausente. Por lo tanto, aun bajo el caso de la *Autoridad de Fuentes Fluviales*, no es necesario el embargo previo de bienes del demandado ausente en un caso como el de autos. La resolución del tribunal a quo es congruente con las decisiones de este Tribunal, y ello es suficiente para que sostengamos la validez de su resolución. Incidentalmente, este aspecto del Derecho ha estado saturado de ficciones y de conceptos mecánicos. Se hace preciso el formular un análisis realista que penetre a través del velo de los anacronismos y de los refinamientos técnicos. Uno de los métodos debe ser el de aquilatar en la escala de los valores judiciales el interés social y la necesidad legítima del individuo. Afortunadamente ya la Corte Suprema de los Estados Unidos ha levantado la cortina. En un caso de gran significación en cuanto al procedimiento de notificación de demandas a no residentes, ese Tribunal, con singular maestría, ha ido más allá del *ratio decidendi* de *Pennoyer* v. *Neff* y ha adoptado normas realistas en cuanto a este campo de la ley, que reconcilian la utilidad social con el interés individual. Nos referimos al caso de *Mullane* v. *Central Hanover Trust Co.*, 339 U.S. 306. Se trataba de la liquidación y determinación de cuentas de una compañía fiduciaria, residiendo un gran número de beneficiarios fuera del Estado donde se tra-

mitó el litigio.   Los hechos eran distintos a los aquí envueltos, pero la tesis de, y el análisis hecho por, la Corte Suprema son de entera aplicación.

En la opinión del Juez Jackson se dice lo siguiente:

"Nos enfrentamos, en el inicio, con una impugnación al poder del Estado—el derecho de sus Cortes de formular una adjudicación en cuanto a beneficiarios que residen fuera del Estado de Nueva York.   Se alega que el procedimiento es *in personam* en cuanto a que el decreto no afecta el título ni la posesión de *res* alguno, y se refiere solamente al derecho de los beneficiarios de imponer responsabilidad al fiduciario por negligencia o incumplimiento del fideicomiso.   Por lo tanto, se alega que bajo la doctrina estricta de *Pennoyer* v. *Neff,* 95 U.S. 714, la Corte de Nueva York carece de jurisdicción sobre no residentes que no han sido notificados personalmente.

"La diferencia entre acciones *in rem* e *in personam* son antiguas y originalmente expresaban, en términos procesales, lo que realmente constituía una diferencia en la ley sustantiva de propiedad, bajo un sistema legal muy distinto al nuestro.   Buckland and McNair, *Roman Law and Common Law,* 66; Burdick, *Principles of Roman Law and their Relation to Modern Law,* 298. El reconocimiento legal y aumento de importancia económica de formas incorpóreas e intangibles de propiedad han perturbado la antigua sencillez del Derecho de Propiedad y la claridad de sus distinciones, mientras que nuevas formas de procedimientos han creado confusión en la vieja clasificación procesal.   Las cortes americanas en algunas ocasiones han clasificado algunas acciones como *in rem* porque la notificación personal no era requerida, y en otras ocasiones han resuelto que la notificación personal no era requerida porque la acción era *in rem*.   Véase los casos citados en Freeman, *Judgments,* sección 1517 et seq. (5a. ed.)

"Los procedimientos judiciales de determinación de cuentas fiduciarias han sido designados en algunas ocasiones como *in rem* o, en forma más indefinida, como *quasi in rem* o, en forma más indefinida aún, 'de la naturaleza de un procedimiento *in rem*'. No es claramente aparente la forma en que las cortes de Nueva York clasificarían este procedimiento, que tiene algunas características, y carece de otros atributos de tanto los procedimientos *in rem* como de los *in personam*.   De todos modos creemos que los requisitos de la Enmienda 14 de la Constitución Federal no dependen de una clasificación con respecto a la cual las normas

son tan elusivas y confusas generalmente y que son definidas en distintas formas por las cortes estaduales. Sin criticar la utilidad de distinciones entre acciones *in rem* e *in personam* en muchas ramas de la ley, o en cuanto a otras cuestiones, ò el razonamiento detrás de ellas, no hacemos descansar el poder del Estado para acudir a una notificación constructiva o sustituta, en este procedimiento, sobre la forma y manera en que esta Corte considere esa antítesis histórica. Es suficiente el observar que, no importa cuál sea la definición técnica del procedimiento, el interés de cada Estado en suministrar medios para liquidar fideicomisos que existen debido a sus leyes y se administran bajo la supervisión de sus cortes, es tan insistente y arraigado en sus costumbres, que ello establece indudablemente el derecho de sus tribunales para determinar los intereses de todos los reclamantes, residentes o no residentes, siempre y cuando que el procedimiento usado les conceda una completa oportunidad de comparecer y ser oídos.

".    .    .    .    .    .    .    .

"La notificación escrita personal dentro de la jurisdicción es la forma clásica de notificación, siempre adecuada en cualquier tipo de procedimiento. Pero el interés vital del Estado de obtener una resolución final de las cuestiones en cuanto a fiduciarios puede ser logrado solamente si los intereses o reclamaciones de individuos que están fuera del Estado pueden ser dilucidados en alguna forma. Una interpretación de la cláusula del debido procedimiento que interponga obstáculos imposibles o impracticables a tal logro, no puede estar justificada.

"En contra de ese interés del Estado tenemos que pesar en la balanza el interés individual protegido por la enmienda 14. Ello se define por nuestro dictamen al efecto de que 'el requisito fundamental de un debido proceso de ley es la oportunidad de ser oído'. *Grannis* v. *Ordean*, 234 U.S. 385, 394. Este derecho a ser oído tendría poca realidad o valor a menos que uno quede informado de que la cuestión está pendiente, y pueda resolver por sí propio si comparecerá o no, si se allana o entabla la lucha.

"La Corte no se ha comprometido a ninguna fórmula que logre un balance entre esos intereses en determinado procedimiento o que establezca en qué ocasiones se puede utilizar la notificación constructiva o sustituta, o qué criterio debe satisfacerse. La notificación no ha sido considerada bajo todas las circunstancias como necesaria para un debido proceso en cuanto a residentes y, con más frecuencia, ha sido considerada como

innecesaria en cuanto a no residentes. No perturbamos ninguna de las reglas establecidas en cuanto a tal cuestión . . . ."

Se sigue resolviendo por la Corte Suprema de los Estados Unidos que, en cuanto a no residentes cuyas direcciones no sean conocidas, la publicación en los periódicos es un método suficiente, pero en cuanto a los no residentes cuyas direcciones en el extranjero sean conocidas, es esencial el envío de la notificación por correo a tales direcciones para que queden cumplidos los requisitos de un debido proceso de ley. En síntesis, la Corte Suprema nacional ignora la vieja clasificación de acciones *in rem* o *in personam* e indica que la cuestión debe ser resuelta a base del establecimiento de un balance entre el interés social en determinada relación objeto de un litigio y el interés individual en que se use un método de notificación que garantice a un demandado una oportunidad de ser informado, de ser oído y de presentar sus objeciones. Incidentalmente, las normas enunciadas en el caso de *Mullane* han sido específicamente adoptadas por las Cortes de California, en el caso reciente de *Sevier* v. *Bank of America Nat. Trust & Sav. Ass'n.*, 225 P.2d 3, en donde se indica que la opinión en el caso de *Mullane* ha eliminado lo puramente mecánico, y en donde se resuelve que la eficacia de una notificación constructiva o sustituta ya no depende de si la acción es *in rem* o *in personam*, teniendo las cortes el derecho a determinar los intereses de todos los reclamantes, ya sean residentes o no residentes, siempre y cuando que el procedimiento utilizado conceda una amplia y completa oportunidad para comparecer y ser oído. (El caso de *Mullane* es objeto de comentarios en 36 Cornell L. Q. 541 y en 100 Pa. L. Rev. 305. El caso fué citado posteriormente con aprobación por la propia Corte Suprema nacional en *Standard Oil Co.* v. *New Jersey*, 341 U.S. 428, 434.)

A la luz de lo resuelto en el caso de *Autoridad de Fuentes Fluviales v. Corte*, supra, no es aplicable el caso de *Mullane* al de autos, ya que, de acuerdo con la Regla 4 (*e*) de

470

las de Enjuiciamiento Civil, tal como fué interpretada en el caso de la *Autoridad de Fuentes Fluviales*, las normas de aplicación son aquellas contenidas en las decisiones de este Tribunal dictadas antes de la adopción de las Reglas de Enjuiciamiento Civil. Independientemente de la conveniencia y necesidad de que se enmiende dicha Regla 4 (*e*) a tono con la nueva doctrina realista sentada en el caso de *Mullane*, hasta tanto dicha regla no quede enmendada, tenemos que atemperarnos a las decisiones de este Tribunal, dictadas antes de las reglas. Pero aun bajo esas decisiones judiciales previas, actuó correctamente el tribunal a quo al declarar sin lugar la moción impugnando su jurisdicción.

*Debe anularse el auto expedido.*