PABLO CRUZ, representado por su madre con patria potestad, MARGARITA CRUZ, demandante y apelado, *v.* PABLO CARRASQUILLO, demandado y apelante.

Núm. 8491.—*Sometido:* Enero 15, 1943. *Resuelto:* Marzo 1, 1943.

*Faustino R. Aponte* y *Arturo Aponte,* abogados del apelante; *Zoilo Dueño González,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Éste es un pleito sobre filiación fallado por la corte de distrito declarando que el demandante Pablo Cruz es hijo natural del demandado Pablo Carrasquillo.

Carrasquillo apeló y en su alegato señala dos errores como cometidos por la corte sentenciadora "al declarar con lugar la demanda basada en una teoría distinta de la planteada en las alegaciones" y "al declarar al demandante hijo natural reconocido del demandado por la mera existencia de un documento que fué firmado en la corte municipal de Yabucoa," infringiendo el artículo 125 del Código Civil.

La demanda fué interpuesta por el menor Pablo Cruz representado por su madre natural con patria potestad sobre el mismo, Margarita Cruz. En ella se alegó que Pablo Carrasquillo, el demandado, y Margarita Cruz, siendo ambos solteros y sin impedimento para casarse, sostuvieron relaciones amorosas, viviendo en concubinato, y que durante esas relaciones procrearon al menor demandante, que nació en abril 17, 1938. Además, que el demandado ha tenido al demandante como hijo suyo desde que nació, pública y privadamente, ocupándose de sus necesidades y alimentos.

En su contestación negó el demandado haber sostenido relaciones de clase alguna con Margarita Cruz y que hubiera reconocido como hijo suyo al demandante y se ocupara en forma alguna del mismo.

Fué el pleito a juicio. Llamada la madre a declarar, dijo substancialmente que había nacido en un barrio de Yabucoa

y fué al pueblo a trabajar en el hotel de Mario Dávila, donde servía a los huéspedes. Uno de éstos, el demandado, "fué pretendiente mío y además . . . fué esposo. . . . Bueno yo le quiero decir que fué marido mío y que yo tuve un hijo de él . . . me enamoraba . . . tratándome con buenas ideas, me ofreció casamiento, que él era un hombre soltero . . . que él me prometía . . . ser por mí toda su vida."

Estuvo en el hotel como seis meses. Se fué al campo y volvió al pueblo colocándose en la casa de Digno Rincón. "Entonces continuó Pablo Carrasquillo a estar pendiente de mí y yo como ya le tenía cariño pues le seguí, . . . me hizo la invitación a . . . pasear en carro una noche, . . . yo accedí complacida . . . me llevó a la playa de Humacao," donde realizaron actos carnales, que continuaron, "y entonces llegó el tiempo en que salí con un 'hijo . . . al sentirme embarazada le llamé la atención . . . y él me dijo que lo que podía hacer era buscar una habitación que él la pagaba." Consiguió la habitación en la casa de Marta Prado. Carrasquillo se la amuebló e iba a ella día y noche. Fué a dar a luz al hospital. La atendió Angela Burgos a quien Carrasquillo pagó un peso y medio por sus servicios.

Carrasquillo "siempre le pasaba al niño, . . . a medida que . . . iba creciendo él se iba retrancando," le pasaba un peso y medio semanal, "a los dos meses me bajó a un peso, entonces decidí llevarlo a la corte municipal . . . y quedó en firmar uno cincuenta, en dármelos semanalmente sin excusa de ninguna especie. . . . " El semanal se lo da ahora la hermana de Carrasquillo, porque éste no está en el pueblo. Repreguntada insistentemente sobre si había salido o tenido relaciones con el policía Ojeda o con otros hombres que se le nombran, lo negó en absoluto.

Marta Prado declaró que alquiló una habitación a Margarita Cruz quien vivió en ella. "Y Pablo Carrasquillo, lo pude ver un día por el día que fué, no sé si se quedó o salió, yo sé que entró allí . . . una noche lo oí que ella lo llamó . . . para que se levantara."

Angela Burgos, comadrona, manifestó haber asistido a Margarita en el Hospital. "... al otro día que fuí a apuntar el niño vine donde él para que firmara ... don Guilo Carrasquillo, y él no quiso firmar y me dió $1.50."

Se admitió seguidamente sin objeción la certificación de la inscripción del nacimiento del demandante y luego la de la sentencia en el caso de abandono de menores, que dice:

"En la sesión de esta corte celebrada hoy, 15 de diciembre de 1936, fué llamado este caso a juicio oral por su orden de señalamiento. Compareció el Lcdo. Rafael Dávila Ortiz como abogado del acusado y anunció que éste y la denunciante habían llegado a un acuerdo en virtud del cual solicitarían el sobreseimiento y archivo de este caso, y al efecto se radicó una moción de transacción....

"La denuncia en este caso imputa al acusado Pablo Carrasquillo una supuesta infracción de la Ley 35 de 1931. En ella sustancialmente se alega que desde principios de noviembre de 1936, y en Yabucoa, el expresado acusado Pablo Carrasquillo ilegalmente y sin excusa justificativa ha dejado de pasarle una cantidad adecuada a la denunciante para la alimentación, vestuario y medicinas de su hijo Pablo Roberto Carrasquillo, a pesar de los requerimientos hécholes por la denunciante.

"La ley que se ha citado, enmendatoria del artículo 263 del Código Penal, dice así: (se transcribe).

"El escrito de transacción a que nos hemos referido arriba y que aparece jurado por el acusado y por la denunciante, dice textualmente así:

" 'Comparecen la denunciante Margarita Cruz y el denunciado Pablo Carrasquillo y respetuosamente exponen, alegan y solicitan: que en el presente caso han llegado a una transacción en virtud de la cual el denunciado se compromete a pasarle la cantidad de $1.50 semanales a la denunciante para el sostenimiento del menor Pablo Roberto Carrasquillo; que dicha cantidad la pasará el denunciado a la denunciante sin excusa de ningún género todas las semanas y en efectivo; que la denunciante está conforme, y así lo expresa y solicita de la Hon. Corte, que se ordene el archivo y sobreseimiento del presente proceso, no teniendo interés alguno en su continuación. En mérito de lo cual, ambos comparecientes expresamente solicitan del tribunal que de acuerdo con el art. 445 del Código de Enjuiciamiento Criminal vigente, decrete el archivo y sobreseimiento de la denuncia en el presente caso, previo el pago de las costas. Yabucoa,

P. R., a 15 de diciembre de 1936. (Firmados) Magrarita Cruz, denunciante. Pablo Carrasquillo, denunciado.'

"   .   .   .   .   .   .   .

"Interpretando no solamente la letra sino también el espíritu de la ley a que nos hemos referido en el párrafo anterior, y obedeciendo al más alto espíritu de justicia, consideramos que el escrito de transacción antedicho es uno que está comprendido dentro del artículo 446 del Código de Enjuiciamiento Criminal.

"Ejerciendo, pues, la facultad discrecional que la ley confiere a esta Corte en casos de esta naturaleza, se ordena el archivo y sobreseimiento de este proceso y se absuelve libremente al acusado, previo el pago de las costas."

Con la presentación de esos documentos terminó la prueba del demandante. La del demandado consistió en su propia declaración y en las de Gertrudis Carrasquillo, Erasmo Rivera, Cecilio Berríos y Rafael Dávila.

Gertrudis Carrasquillo, hermana del demandado, manifestó que estando éste fuera de Yabucoa, ella entrega el semanal del menor—$1.50—de acuerdo con la sentencia que conoce desde que fué dictada. Últimamente lo va a buscar a su tienda el mismo niño.

Erasmo Rivera expresa que salió dos noches de paseo en un mismo auto, él con una mujer y el demandado con Margarita Cruz. Fué invitado para una tercera salida que se efectuó pero entonces no fué el demandado con Margarita sino Ojeda, un policía, lo que comunicó al día siguiente a Carrasquillo. Eso fué allá por el 1935.

Cecilio Berríos es un chófer de carros públicos que dijo llevó al policía Andrés Acevedo, una noche del año 1935 ó 1936, hasta la casa de Margarita Cruz y el policía le indicó que llamara a la puerta. Lo hizo y salió y "ella dijo, '¿qué pasa?" Yo le dije, 'viene para acá,' que Andrés venía para acá, el policía, y ella se quedó con la puerta abierta, y entonces él subió arriba y trancó la puerta, entonces me dijo, 'vete,' y yo cogí y me fuí."

Pablo Carrasquillo, el demandado, admitió que tuvo relaciones sexuales con Margarita Cruz en varias ocasiones, pero

negó que le pagara la habitación en que vivía y que se la amueblara. Afirma que nunca estuvo en su habitación. Dijo que no le pasaba cantidad regular alguna. Le regalaba a veces medias, bombones. El primer semanal que le pasó fué después de la sentencia. Firmó el convenio por consejo de su abogado.

El último testigo que declaró fué el abogado Rafael Dávila Ortiz que representó a Carrasquillo en el caso sobre abandono de menores. Refiriéndose a Carrasquillo y al caso, se expresó así:

"Pues él estuvo en mi oficina a consultarme sobre ese asunto, y como se trataba de una denuncia por abandono de menores, conociendo yo ya la ideología del Juez Ramos que presidía la corte municipal de Yabucoa, ante la cual estaba radicada la denuncia, conociendo también la ideología del juez que presidía esta corte de distrito, compañero Arjona Siaca, sobre estos casos de abandono de menores, yo creí que era más conveniente para mi cliente arreglar ese asunto, que arreglara ese asunto, y así se lo aconsejé, entonces redacté esta moción que aparece copiada aquí en la sentencia y la llevé a la corte e hice que la firmara bajo juramento mi cliente, y Margarita Cruz, la denunciante."

Y a la pregunta

"¿En algún momento Pablo Carrasquillo, a pesar de la amistad de usted con él, le dijo a usted que él fuera padre de este niño?"

contestó

"No, lo negó rotundamente siempre y decía que tenía testigos para defenderse y yo creí que a pesar de los testigos y todo, podría ser condenado, lo más seguro es que lo fuera, y debido a eso le aconsejé que hiciera una transacción comprometiéndose a pasar una cantidad, pero sin admitir en ningún momento que fuera su hijo."

El juez sentenciador concluyó que la evidencia a que acabamos de referirnos no era suficiente para probar el concubinato ni la posesión de estado de hijo natural, que fueron las causas alegadas expresamente en la demanda para pedir el reconocimiento, pero dictó sentencia favorable al demandante por los siguientes motivos:

"De la prueba, sin embargo, surge una circunstancia especial que no debe pasar desapercibida. Nos referimos a la responsabilidad que voluntariamente asumió el demandado al suscribir la estipulación que sirvió de base a la sentencia de la Corte Municipal de Yabucoa, y que, ofrecida en evidencia por el demandante, no la objetó y en cambio la hizo prueba suya el demandado.

"Dicho documento reviste todas las características de la prueba auténtica a que se refiere el número 4 del artículo 125 del Código Civil antes citado. Y, aunque suscrito por el demandado a los dobles efectos (1) de *obligarse a pasar un semanal* a Margarita Cruz para alimentos del demandante, (2) *a condición de que se sobreseyese* la denuncia contra él interpuesta, tiene un mayor alcance, cual es el de implicar el reconocimiento de la paternidad imputádale en dicha denuncia.

"¿Hubiera el demandado firmado esa estipulación de no reconocerse padre del hijo de Margarita Cruz? ¿Pues quién que no sea padre va a asumir la obligación de pasar alimentos a quien a título de hijo los reclama?

"Por mucho que el demandado quisiera desvirtuar la fuerza probatoria de esa estipulación, ya mediante su propia declaración, ya mediante la del licenciado R. Dávila Ortiz, no sería posible. La denuncia le informó claramente del cargo que se le hacía: 'dejar de pasarle una cantidad adecuada a la denunciante para la alimentación, vestuario y medicinas de su hijo Pablo Roberto Carrasquillo'; y conociendo tal cargo, suscribió y juró la estipulación o transacción a virtud de la cual se obligó a pasar un semanal a la denunciante para los alimentos del menor Pablo Roberto Carrasquillo, y se pedía a la corte el archivo de la denuncia.

"La estipulación se hizo a base de lo dispuesto en los artículos 445 y 446 del Código de Enjuiciamiento Criminal. Y seguramente que para que la transacción que se buscaba fuera más solemne, no se limitó la denunciante a reconocer que había recibido reparación por el daño causádole por el denunciado, sino que juntamente con éste firmó la referida estipulación en sus dos efectos.

"Para que proceda el sobreseimiento de una causa a tenor de lo dispuesto en los artículos citados, es condición indispensable que el denunciado asuma la responsabilidad de los actos que se le imputan en la denuncia, es decir, debe reconocer su culpabilidad del delito. Y si ese delito es el de abandono de menores, la admisión conlleva la paternidad, es decir, el hecho de ser el padre que ha faltado al cumplimiento de un deber que la naturaleza y la ley le imponen de suministrar alimentos a su hijo.

"Con esta prueba bajo nuestra consideración, no queda otra alternativa que la de declarar que el demandado Pablo Carrasquillo es el padre natural de su hijo habido como fruto de sus relaciones con Margarita Cruz.

"De no existir tal documento y a pesar de nuestra conclusión de que dentro de la doctrina del derecho civil vigente, y de la jurisprudencia que la ilustra, no cabría por la prueba practicada declarar la paternidad por la causal del concubinato ni por la causal de hallarse el demandante en la posición continua del estado de hijo natural del padre demandado, sin embargo, esa misma prueba no nos deja dudas de que de las relaciones del demandado con la madre del demandante nació un hijo y que ese hijo es el demandante en este caso. Con la misma prueba, en sostenimiento de una denuncia criminal por abandono de menores, se impondría una sentencia de culpabilidad, ya que el caso contiene elementos probatorios de mucha mayor fuerza que los de *El Pueblo* v. *Rohena,* 52 D.P.R. 313, *El Pueblo* v. *López,* 54 D.P.R. 294, y últimamente el de *El Pueblo* v. *De Jesús,* 57 D.P.R. 708.''

Y fué esa actitud asumida por la corte sentenciadora la que llevó a la parte apelante a señalar los errores en que funda su recurso en la forma en que lo hizo.

Repetidamente se ha dicho que el recurso de apelación no se da contra los fundamentos de la sentencia si que contra la sentencia misma, de suerte que si la sentencia se sostiene a virtud de las alegaciones y las pruebas, procede su confirmación aunque sean erróneos los motivos expuestos por el juez para dictarla. Y así sucede, a nuestro juicio, en el presente caso.

Estamos enteramente conformes con el juez sentenciador en que no se probó el concubinato, pero no lo estamos en que dejara de probarse la posesión de estado.

Las relaciones amorosas entre el demandado y Margarita Cruz son evidentes y duraron un período considerable de tiempo. Como consecuencia de ellas nació el menor demandante.

Que el demandado reconoció al menor como su hijo, surge no sólo de la declaración de la madre si que de la de la comadrona que la asistió en el parto.

Es cierto que el demandado cuando la comadrona le sugirió que lo inscribiera como su hijo en el registro civil, se negó a dar su consentimiento, pero eso no obstante le pagó sus servicios e implícitamente lo reconoció ante ella como tal. Sus actos de reconocimiento continuaron al proveer a la madre la mínima cantidad que le daba para el sostenimiento del menor y culminaron en la transacción que sirvió de base a la sentencia en el caso de abandono y en el acatamiento a la misma no ya por su parte si que por un miembro de su familia, su hermana Gertrudis.

La sentencia en el caso de abandono de menores de que se trata no debe considerarse como lo hizo el juez sentenciador como un documento aislado determinante en sí mismo de una causa separada de reconocimiento, sino en relación con el resto de la evidencia que fué en verdad como se introdujo en el juicio, y así considerada, pone de manifiesto la realización de actos del padre en armonía con los que vino realizando antes del nacimiento y después del nacimiento del hijo, que demuestran que éste se hallaba en la posesión continua de su condición de hijo natural del demandado, que le daba derecho al reconocimiento.

No importa que el demandado tratara de eludir su responsabilidad. La fuerza de la verdad era tal que aún sin quererlo procedió de modo que sus actos no pueden interpretarse sino como de reconocimiento. Muy a su pesar parece que lo fué, pero tanto él como su hermana por sus actos reconocieron que el menor era hijo natural del demandado, y una vez que eso sucede, no es posible descargarse de la responsabilidad contraída, porque la ley prescribe que "el padre está obligado a reconocer al hijo natural," entre otros casos que especifica, "cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia." Artículo 125, núm. 2, del Código Civil, ed. 1930.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*