JOSÉ ÁNGEL y NITZA ENID PEÑA, representados por su madre con patria potestad LYDIA ANGÉLICA PEÑA, demandantes y apelados, *v.* LA SUCESIÓN DE JOSÉ H. BLONDET, compuesta por MERCEDES TORRES, IVELISSE, ISABEL y JOSÉ JOAQUÍN BLONDET TORRES, demandados y apelantes.

Núm. 10141.—*Sometido:* Noviembre 6, 1950.   *Resuelto:* Enero 16, 1951.

*Romany & Romany,* abogados de los apelantes; *Guillermo Bauzá,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Se trata de una acción de filiación en la cual se alegó por los demandantes la posesión continua del estado de hijos naturales del causante de los demandados y el concubinato que existió entre éste y la madre de aquéllos. Incisos 2 y 3 del artículo 125 del Código Civil, ed. de 1930. La demanda fué declarada con lugar y los demandados apelaron.

■■ El primer error que señalan surge de los siguientes hechos: Antes de contestar la demanda enmendada, los demandados sometieron un interrogatorio a ser contestado por la madre de los demandantes,[1] quien compareció en

_____

[1] No se expuso por los demandados motivo alguno que justificara, ni se solicitó permiso de la corte inferior, para someter tal interrogatorio

la acción en su representación por ser éstos menores de edad. No habiendo contestado dicho interrogatorio dentro del término de quince días que provee la Regla 33 de las de Enjuiciamiento Civil, (²) los demandados solicitaron la desestimación de la demanda. Los demandantes habían solicitado una prórroga para contestar el interrogatorio pero como no habían expuesto en su moción la justa causa que requiere la Regla 33 para obtenerla, la corte los requirió para que expusieran los fundamentos que tenían para solicitarla, por orden del 19 de febrero de 1947. En la misma fecha los demandantes radicaron su contestación al interrogatorio. Discutida la moción de los demandados para que se desestimara la demanda, el tribunal inferior declaró sin lugar dicha moción basándose en la Regla 37 (d). (³)

Arguyen los apelantes que no habiendo los demandantes expuesto a la corte a quo la justa causa que requiere la Regla 33, supra, para obtener permiso para radicar su contestación al interrogatorio después de vencidos los quince

---

antes de radicar la contestación, según requiere la regla establecida en *Rodríguez* v. *Corte*, 67 D.P.R. 723.

(²) La Regla 33, en lo pertinente, provee:

"*Interrogatorios a las Partes.*—Una parte litigante podrá notificar y entregar a cualquiera parte adversa interrogatorios por escrito para ser contestados por la parte así notificada . . . Los interrogatorios serán contestados por separado y totalmente, por escrito y bajo juramento. Las contestaciones serán firmadas por la parte que las diere; y la parte a la cual le fueren notificados y entregados los interrogatorios entregará una copia de las contestaciones a la parte que los hubiere presentado, dentro de los quince días siguientes a la entrega de los mismos, a menos que la corte, mediante moción debidamente notificada y por justa causa, prorrogue o acorte el plazo. . . ."

(³) La Regla 37 (d) dispone lo siguiente:

"*Falta de Comparecencia o de Radicación de Contestaciones por la Parte.*—Si una parte o un funcionario o agente administrador de una parte intencionalmente dejare de comparecer ante el funcionario que ha de tomar su deposición, después de haber sido debidamente notificado, o dejare de presentar y notificar contestaciones a los interrogatorios sometidos de acuerdo con la Regla 33, después de habérsele notificado debidamente los mismos, la corte mediante moción y notificación podrá eliminar en todo o en parte cualquier alegación de esa parte, o desestimar la acción o procedimiento o alguna parte de los mismos, o registrar una sentencia en rebeldía contra dicha parte."

días, ni haber la corte concedido permiso para que radicaran dicha contestación, no podía la corte hacer uso de la discreción que le concede la Regla 37(d), supra, para negarse a desestimar la acción.

En el reciente caso de *Pepín* v. *Ready-Mix Concrete*, 70 D.P.R. 758, consideramos el alcance de las Reglas 33 y 37(d) en relación con los hechos específicos de dicho caso, los cuales demostraron que los interrogatorios no habían sido debidamente notificados al demandante y por ende, que el demandante no había dejado de contestarlos de manera intencional y resolvimos que la corte no erró al negarse a desestimar la demanda. Citamos en dicho caso el de *Valenstein* v. *Bayonne Bolt Corp.*, 10 Fed. Rules Serv. 696, al efecto de que la Regla 37 otorga amplia discreción a la corte para dictar cualquier resolución que considere justa "a la luz de los hechos de cada caso específico".

Es de notarse que las disposiciones de la Regla 37, en sus distintos apartados, contemplan la situación en que un deponente se niega a contestar alguna pregunta que se le hiciese al tomarse una deposición o que una parte dejare de comparecer intencionalmente ante el funcionario que ha de tomar la deposición o que intencionalmente dejare de presentar y notificar contestaciones a los interrogatorios sometidos de acuerdo con la Regla 33. Aun en esos casos y en la interpretación liberal que se ha dado a la Regla 37(d) en relación con la 33, se ha resuelto que la corte tiene discreción para conceder una nueva oportunidad a la parte para contestar los interrogatorios. *Dann* v. *Compagnie Generale Trans-Atlantique, Ltd.*, 29 F.Supp. 330; *Producers Releasing Corp. de Cuba* v. *PRC Pictures*, 176 F.2d 93 (C.C.A. 2, 1949). En aquellos casos en que se demuestra que la parte ha actuado en forma dilatoria o contumaz al negarse a contestar los interrogatorios o los ha contestado en forma evasiva es que, por lo general, las cortes han ejercitado su discreción imponiendo las penalidades provistas en la Regla 37. *Fisher* v. *Underwriters at Lloyd's London*, 115 F.2d

641 (C.C.A. 7, 1940); *Michigan Window Cleaning Co.* v. *Martino*, 173 F.2d 466 (C.C.A. 6, 1949); *Producers Releasing Corp. de Cuba* v. *PRC Pictures*, supra, y casos citados a la pág. 95.

El caso de autos es distinto. Aquí los demandantes no se negaron a contestar el interrogatorio sometido por los demandados. Su única falta consistió en radicar dicha contestación, sin permiso de la corte, después de vencido el término de quince días que dispone la Regla 33. Los demandantes pudieron haberse negado a contestar el interrogatorio hasta que los demandados hubieran radicado su contestación a la demanda enmendada—*Rodríguez* v. *Corte*, supra—pero no aparece del récord que levantaran esa cuestión como defensa. El tribunal inferior, al denegar la moción de los demandados, hizo constar que la contestación al interrogatorio era completa y detallada y que si bien no fué radicada dentro del término de ley, "dada la naturaleza del procedimiento, y al hecho de que en el mismo están envueltos los derechos de dos menores, el Tribunal entiende que es de justicia que este caso se vea en sus méritos. . ."

No erró el tribunal inferior al así resolver la cuestión planteada pues consideramos que hizo buen uso de la discreción que le concede la Regla 37 (d), supra.

■ Por el segundo señalamiento sostienen los apelantes que la corte inferior erró al permitir que declararan varios testigos cuyos nombres no figuraban en la lista suministrada por los demandantes al contestar el interrogatorio. El récord demuestra que la corte, al ser llamados a declarar dichos testigos y oponerse los demandados a que declararan porque sus nombres no figuraban en la referida lista, ordenó que solamente dieran sus nombres y direcciones y no permitió que declararan hasta varios días después, al continuar la vista del caso. Por otra parte, al contestar el interrogatorio los demandantes hicieron constar que además de los testigos que especificaban, tenían "otros que por ser en gran número no puede numerarlos (sic)." Los demandados nunca soli-

citaron que se especificaran los nombres de esos testigos adicionales. Bajo las anteriores circunstancias, no se cometió el error imputado.

■ Al contrainterrogar a la madre de los demandantes, Lydia Angélica Peña, los demandados le preguntaron si era o no verdad que ella le había escrito una carta a José H. Blondet, causante de los demandados, diciéndole que hacía tiempo que no recibía de él un centavo. Como la testigo ya había contestado otras preguntas negando que hubiera escrito tal carta y que estaba segura que no la había escrito, los demandantes objetaron la pregunta y solicitaron que se mostrara la carta. La corte declaró con lugar la objeción y ordenó a los demandados que mostraran la carta a la testigo. El abogado de los demandados admitió que la carta no existía y que había sido una invención suya. Los apelantes alegan ahora que la corte a quo erró al no permitir la pregunta.

En primer término, de la transcripción de evidencia aparece que la testigo repetidamente contestó que no había escrito la carta a que se refería el abogado de los apelantes. Por tanto, al insistirse en la misma pregunta, si lo que se deseaba era sentar las bases para impugnar la declaración de la testigo, no erró la corte al sostener la objeción, ya que de acuerdo con el artículo 159 de la Ley de Evidencia (artículo 521 del Código de Enjuiciamiento Civil), si las manifestaciones contradictorias hechas por la testigo constaban por escrito "deberán enseñarse al testigo antes de podérsele interrogar acerca de ellas".

■■ Los errores cuarto y quinto son frívolos y así parecen considerarlos los apelantes pues apenas si los discuten en su alegato. En ellos alegan que la corte inferior no les permitió, en el contrainterrogatorio de la testigo Celia Guadalupe Martínez, hacer que ella repitiera su declaración y que erró al darle crédito a la declaración de la madre de los demandantes Lydia Angélica Peña. La corte tiene discreción para permitir o no que a un testigo se le obligue a repetir su declaración, y la única contradicción a que hacen

referencia los apelantes en la declaración de Lydia Angélica Peña no es de por sí suficiente para no darle crédito y así lo hizo constar la corte, como veremos al discutir el próximo señalamiento.

En él se alega que la corte a quo no cumplió "con las disposiciones de la Regla 52 (*a*) pues no hizo conclusiones de hecho ni de derecho sobre los dos extremos vitales en que podía descansar la causa de acción de la demandante, o sea si la madre fué o no conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo ni tampoco si los demandantes se hallaban en la posesión continua del estado de hijo natural de José H. Blondet".

En su relación del caso y opinión, después de hacer un análisis de las declaraciones de los testigos, la corte inferior hizo constar lo siguiente:

"Del estudio, análisis y comparación de toda la prueba en este caso llegamos a la conclusión que los hechos envueltos son los siguientes:

"Lydia Angélica Peña, allá para fines de 1939, era una joven blanca y atractiva que fué requerida en amores por José H. Blondet quien, aunque ya para esa fecha era casado, le dijo a Lydia que estaba separado de su esposa. Al principio de 1940 Lydia accedió a los requerimientos amorosos de Blondet y empezaron a tener relaciones sexuales, primero en el Balneario de Palo Seco, después en el Hotel Central de San Juan y luego en la residencia de Lydia. Posteriormente en una casa que amuebló y contrató Blondet en la Calle Vizcarrondo en Caguas, y más tarde en la casa núm. 15 de la Calle Lago en Gurabo. José H. Blondet visitaba casi diariamente a Lydia y sus relaciones sexuales eran frecuentes, hasta la muerte de Blondet en el 1946. Durante todo este tiempo, o sea desde principio de 1940 hasta el verano de 1946, Lydia Angélica Peña no tuvo relaciones amorosas con ningún otro hombre que no fuera José H. Blondet. Como consecuencia de las relaciones sexuales entre Lydia Angélica Peña y José H. Blondet nació José Ángel en la Clínica San Rafael de Caguas el día 7 de julio de 1943 y Nitza Enid el 5 de marzo de 1945, en la Calle Lago de Gurabo. Desde el instante del nacimiento de ambos menores hasta la

muerte de Blondet, éste realizó continuamente actos de reconocimiento de dichos menores como sus hijos naturales y los trataba como tales hijos naturales, privada y públicamente, con palabras, gestos y actos; manteniéndolos, alimentándolos, paseándolos, prodigándoles cariño y cuidándolos. No tenemos duda alguna de que José H. Blondet es el padre de los menores José Ángel y Nitza Enid Peña y que tuvo a dichos menores en estado continuo como sus hijos naturales.

"La prueba de los demandantes fué robusta y convincente. Por otro lado la prueba de los demandados tiende a demostrar que Blondet dormía casi todas las noches en su hogar con su esposa e hijos legítimos y que Blondet nunca habló de que tuviera otros hijos que no fueran los de matrimonio. Esta prueba de los demandados no puede destruir la cadena de hechos que surge de la prueba de los demandantes.

Es cierto que en una parte de su declaración Lydia Angélica se contradijo, ya que aceptó que tuvo que colocarse en el Campamento O'Reilly porque lo que Blondet le pasaba no era suficiente para cubrir los gastos de ella y de sus dos hijos. Esta contradicción, tomándola a la luz de toda la declaración de Lydia y del resto de la prueba de los demandantes, no es sobre un extremo esencial. Atribuímos esta actitud de Lydia Angélica a la tendencia de exagerar la situación pensando en que sus dos hijos no deben quedarse, ante la ley, sin padre.

"Debe declararse con lugar la demanda de filiación en este caso, imponiéndoles las costas a los demandados, con honorarios de abogados."

Al discutir este error los apelantes se limitan a llamar la atención de que la corte inferior no hizo ninguna conclusión de hecho o de derecho en cuanto a si los demandantes habían justificado, como alegaron en su demanda, que existió un estado de concubinato entre sus padres. Esto es cierto; empero, la demanda se fundó también en la posesión continua del estado de hijos naturales del causante de los demandados que tenían los demandantes y fué dicha causal la que la corte a quo consideró probada, como cuestión de hecho y de derecho. Lo mismo ocurrió en *Cruz* v. *Carrasquillo*, 61 D.P.R. 435 y *Bianchi* v. *Sucn. Bianchi*, 67 D.P.R. 594.

Los casos que citan los apelantes para sostener que no se cumplió con la Regla 52 (a) (⁴) son claramente inaplicables al de autos. Se refieren ellos a situaciones en que la corte sentenciadora dejó de hacer conclusiones, de hecho o de derecho, que eran indispensables para poder determinar si la sentencia era correcta.

Aun cuando en el presente caso la corte inferior no consignó separadamente su conclusión de derecho en cuanto a la posesión de estado, la misma está incluída en sus conclusiones de hecho cuando dijo:

". . . Desde el instante del nacimiento de ambos menores hasta la muerte de Blondet, éste realizó continuamente actos de reconocimiento de dichos menores como sus hijos naturales y los trataba como tales hijos naturales, privada y públicamente, con palabras, gestos y actos; manteniéndolos, alimentándolos, paseándolos, prodigándoles cariño y cuidándolos. No tenemos duda alguna de que José H. Blondet es el padre de los menores José Ángel y Nitza Enid Peña y que tuvo a dichos menores en estado continuo como sus hijos naturales."

Hemos examinado detenidamente la transcripción de evidencia y consideramos que la prueba de los demandantes, que mereció entero crédito a la corte sentenciadora, es suficiente para sostener la sentencia. *Colón* v. *Sucn. A. J. Tristani*, 44 D.P.R. 171; *Bianchi* v. *Sucn. Bianchi*, supra. De acuerdo con la misma Regla 52-(a), "Las conclusiones de hecho basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas y se tomará en cuenta la oportunidad de la corte sentenciadora para juzgar de la credibilidad de los testigos." A nuestro juicio no puede sostenerse que las conclusiones de la corte a quo sean claramente erróneas. No se cometió, pues, este error y tampoco el último señalado por los apelantes en cuanto a que fueron

---

(⁴) En lo pertinente, la Regla 52 (a) dispone que "En todos los casos la corte expondrá los hechos que estime probados y separadamente consignará sus conclusiones de derecho y ordenará que se anote la sentencia correspondiente . . ."

condenados a pagar $300 en concepto de honorarios de abogado.

*Debe confirmarse la sentencia.*

El Juez Asociado Sr. Snyder no intervino.