JULIO DOMINGO SILVA Y ESCAPA, demandante y apelado, v. JOHN DOE y RICHARD ROE, como herederos de DOMINGO TORRÉNS DÍAZ; JOSÉ SABATER, como ADMINISTRADOR JUDICIAL y representante de la herencia, y EL PUEBLO DE PUERTO RICO, demandados y apelantes los dos últimos.

Número 10787.

*Sometido:* 3 de marzo de 1953. *Resuelto:* 21 de julio de 1953.

(³) Anotaciones al Código Civil, por el Dr. Luis Muñoz Morales, Vol. 1, pág. 401.

*José Sabater, pro se; Hon. Secretario de Justicia, José Trías Monge (J. B. Fernández Badillo, Secretario de Justicia Interino,* en el alegato) y *A. Torres Braschi, Procurador Auxiliar,* abogados de El Pueblo, apelante; *Enrique Báez García,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Domingo Torréns Díaz falleció en Mayagüez, en estado

de soltería e intestado, allá para el 26 de octubre de 1949. Margarita Escapa, conocida por Margarita Torréns, murió en la misma ciudad el 23 de abril de 1938. La demanda en este caso fué iniciada en 2 de noviembre de 1949 por Julio Domingo Silva, hijo de Margarita, con el propósito de que se declare a ésta hija natural de Torréns Díaz, con todos los derechos inherentes a tal estado. Sus alegaciones esenciales fueron que Domingo Torréns Díaz y Candelaria Escapa sostuvieron relaciones amorosas allá para los años 1892 y 1893, como consecuencia de las cuales nació el 9 de octubre del último indicado año(¹) una niña a quien se le puso el nombre de Margarita; durante el embarazo y al tiempo del nacimiento de ésta, Candelaria Escapa fué conocida viviendo en concubinato con Domingo Torréns Díaz;(²) desde su nacimiento hasta el momento de su muerte Margarita estuvo en la posesión continua del estado de hija natural de Domingo Torréns Díaz; ella contrajo matrimonio el 25 de agosto de 1917 y procreó, durante el mismo, al demandante Julio Domingo Silva Escapa, quien nació el 20 de diciembre de 1918; Margarita murió en la fecha indicada sin que su filiación hubiera sido declarada por ninguna corte, dejando al demandante como único y universal heredero; Torréns Díaz falleció en la fecha mencionada, sin dejar descendientes legítimos ni naturales, con excepción del demandante, como tampoco ascendientes o colaterales y por desconocerse qué otras personas constituyen la sucesión de aquél se les designa con los nombres de John Doe y Richard Roe; y que el demandante, en su carácter de hijo legítimo de Margarita tiene derecho a obtener un decreto judicial declarando que ésta es hija natural reconocida de Domingo Torréns Díaz, con derecho a usar su apellido y de participar en su herencia.

---

(¹) Posteriormente se hizo constar que la fecha exacta del nacimiento de Margarita lo fué el 1ro. de abril de 1893, enmendándose la demanda a ese efecto.

(²) Poco después de iniciado el juicio el demandante solicitó se le tuviera por desistido de la alegación relativa al concubinato.

El Lic. José Sabater, en su carácter de Administrador Judicial de los bienes del finado, designado al efecto por resolución dictada por la antigua Corte de Distrito de Mayagüez con fecha 14 de noviembre de 1949, se personó en autos. Radicó una moción para desestimar, fundada en que la acción de filiación es de carácter personal y sólo podía ejercitarla la propia Margarita Escapa y en que la acción ha prescrito. También presentó moción interesando se desestime la contrademanda interpuesta por Carmen María, Guillermina, Julio y Juan Torréns Filpo como parientes colaterales del finado Torréns Díaz. El Pueblo de Puerto Rico también compareció([3]) mediante moción para desestimar la demanda por falta de hechos determinantes de una causa de acción. Por extensa resolución fechada el 6 de julio de 1950 el tribunal a quo declaró sin lugar las mociones del Administrador Judicial y de El Pueblo y con lugar la del primero interesando la desestimación de la contrademanda.([4]) Contestada la demanda separadamente por el Administrador Judicial y por El Pueblo, los hechos esenciales de aquélla fueron negados y las defensas especiales reproducidas. Fué entonces el pleito a juicio, ofreciéndose extensa prueba testifical y documental. El tribunal a quo dictó sentencia declarando a Margarita hija natural reconocida de Domingo Torréns Díaz, con todos los derechos legales inherentes a tal condición, con costas a cargo de la administración judicial, más $2,000 para honorarios de abogado.

El Administrador Judicial apeló e imputa al tribunal sentenciador haber errado al resolver (1) que la sentencia dictada por la audiencia de Mayagüez en 1893, absolviendo a Domingo Torréns Díaz del estupro de Candelaria Escapa

---

([3]) Según el artículo 912 del Código Civil, ed. 1930:

"A falta de personas que tengan derecho de heredar, conforme a lo dispuesto en las precedentes secciones, heredará el Pueblo de Puerto Rico, destinándose los bienes al 'fondo de la universidad'."

([4]) Los contrademandantes apelaron pero por resolución de 8 de noviembre de 1950 este Tribunal desestimó su apelación, debido a no haberse elevado el legajo de sentencia oportunamente.

no es un impedimento (*res judicata*) en el presente caso; (2) que la acción de filiación que el tribunal a quo opina tenía Margarita Escapa, quien murió sin haberla ejercitado, se trasmitió por herencia a su hijo, el demandante; (3) que la acción no está prescrita; y (4) que Margarita Escapa estuvo en el estado constante de hija natural de Domingo Torréns Díaz. El Pueblo de Puerto Rico también apeló en su oportunidad. Señala en su alegato los errores que aparecen bajo los números 2, 3 y 4 en el del Administrador Judicial. Pasaremos en seguida a discutirlos.

## I

### RES JUDICATA

■■ De los autos surge que allá para el 28 de abril de 1893 se procesó a Domingo Torréns Díaz ante la audiencia de Mayagüez por el estupro de Candelaria Escapa y que celebrado el juicio dicha audiencia le absolvió por no haber sido corroborado en debida forma el testimonio de la supuesta perjudicada, es decir porque, según expresa la sentencia absolutoria, "de los hechos que comprende la querella no se ha justificado en este juicio más que el de que [de] una unión ilegítima provino a la joven Candelaria Escapa una hija, sin que sea bastante su afirmación única para atribuir la paternidad de esta criatura a Domingo Torréns, puesto que ni se ha probado que éste sostuviese amores con dicha joven y aún dándolos por existentes que en ellos mediaran promesas, confianzas y compromisos tales que su incumplimiento envolviera el engaño característico de verdadero estupro, por lo que si llegó a realizarse el de que se trata hay méritos para considerarlo como voluntario y por tanto no justificables . . . . .".(⁵) Surge también de ellos que José

_____

(⁵) Por disposición expresa del artículo 468 del antiguo Código Penal para las islas de Cuba y Puerto Rico:

"Los reos de violación, estupro o rapto, serán también condenados por vía de indemnización:

"1.—A dotar a la ofendida, si fuere soltera o viuda.

"2.—A emanciparla si estuviere en su servidumbre.

"3.—A reconocer la prole, si la calidad de su origen no lo impidiere."

María Escapa, padre de Candelaria y abuelo de Margarita, falleció un año tres meses después de dictada la sentencia absolutoria y que poco después de su muerte, Torréns Díaz se llevó a Candelaria a vivir a una casa radicada en el callejón Vista Alegre de la playa de Mayagüez; que Candelaria y Torréns Díaz vivieron juntos desde 1895 a 1902 y que los actos de la posesión continua del estado de hija natural del demandado se iniciaron entonces y se prolongaron hasta la muerte de Margarita en el año 1938, cuando ésta contaba más de 44 años de edad.

Según el artículo 1204 del Código Civil, ed. 1930:

". . . . . . . .

"Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.

"Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra *la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.*

". . . . . . . .

"Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas." (Bastardillas nuestras.)

No concurren en el presente caso todos los requisitos enunciados en el párrafo tercero del artículo 1204, supra. La presunción de cosa juzgada no puede, por tanto, surgir. Aquí los hechos en que se funda la acción de filiación son enteramente distintos y posteriores a aquéllos que sirvieron de base al proceso por el delito de estupro. Ello basta para que la defensa de cosa juzgada no pueda prosperar. Conforme dijimos en *Orama* v. *Oyanguren*, 19 D.P.R. 828, 839:

"Estamos, pues, sostenidos en la opinión consignada al principio de que el primer pleito fallado contra las demandantes en este caso no es obstáculo de cosa juzgada a este segundo pleito,

*porque la acción surge de hechos posteriores al primer fallo y no se discute ninguno de los que existieron o pudieron existir cuando la primera sentencia se dictó."* (Bastardillas nuestras.)

En idénticos términos podemos expresarnos ahora. La acción de filiación aquí instada se basa, repetimos, en hechos que desde su iniciación resultan ser posteriores a los que dieron lugar al proceso por estupro. Véanse también *Iglesia Católica* v. *Municipio*, 59 D.P.R. 191, 221; *González* v. *Méndez*, 15 D.P.R. 701, 716. *Cf. Chabrán* v. *Méndez*, 74 D.P.R. 768; *Meléndez* v. *Cividanes*, 63 D.P.R. 4, 12. El caso de *González* v. *Sucn. Canals*, 25 D.P.R. 362 es claramente distinguible del presente. No existe, pues el impedimento alegado.

## II

### TRASMISIBILIDAD DE LA ACCIÓN

 Si bien al igual que sucede con la de divorcio, la de filiación resulta ser para ciertos fines una acción *cuasi in rem*—*Barletta* v. *Tribunal Superior*, 74 D.P.R. 460—sin embargo, esta última no deja de ser una acción personal para la mayoría de los fines.[6] Pasaremos, por tanto, a discutir en seguida si la acción de filiación que pudo existir, o que existió a favor de Margarita se extinguió al morir ella en 1938. La cuestión es nueva en esta jurisdicción. El caso nuestro que más similitud guarda con el que nos ocupa a este respecto, lo es el de *Gastón* v. *Herederos de Franceschi*, 43 D.P.R. 300. No obstante, ese caso es distinto al presente. En él la acción fué iniciada por la persona que solicitaba su reconocimiento y después de iniciado el pleito esa persona falleció. Resolvimos, copiando del sumario que "Iniciado un pleito sobre filiación, la muerte del demandante no produce la caducidad de la instancia. La acción puede continuarse por los herederos." En el de autos, sin embargo, la acción

---

[6] Véanse Sánchez Román, Derecho Civil, Tomo 6, volumen 1, segunda edición (1910) páginas 54 et seq.; 5 Manresa, op. cit., ed. 1951, pág. 321; Oyuelos, Digesto, Tomo III, página 114; Planiol y Ripert, Derecho Civil Francés, Tomo 4, ed. 1933, sección 192, pág. 240.

no fué iniciada en vida de la presunta hija, sino que lo fué once años después de muerta ella y siete días después de fallecido su presunto padre. La situación legal, no obstante, no varía. La acción de filiación subsiste a pesar de la muerte de Margarita.

El artículo 603 del Código Civil, ed. 1930, dispone que "Los derechos a la sucesión de una persona se trasmiten desde el momento de su muerte" y el 608 del mismo cuerpo legal que *"La herencia comprende todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte."* (Bastardillas nuestras.) [7] El derecho de la causante del demandante a iniciar la acción de filiación es un derecho que ella tenía y no se extinguió con su muerte, sino que se trasmitió a su único heredero, el aquí demandante. Veamos:

En *Arroyo* v. *Fernández*, 68 D.P.R. 514, 517, citando del caso de *Sosa* v. *Sucn. Morales*, 58 D.P.R. 360, dijimos que la máxima *actio personalis moritur cum persona* "no ha prevalecido nunca en el derecho civil, ni puede prevalecer, por ser incompatible con el principio fundamental que sostiene que el heredero es el continuador de la persona jurídica del finado." Dijimos también a la pág. 516 del mismo tomo que "no hay duda de que ciertos derechos personalísimos mueren con la persona y que no se trasmiten a sus herederos. Y es cierto que el derecho a impugnar el testamento era uno personal de la causante del demandante. *Sin embargo, opinamos que aun siendo un derecho personal, es trasmisible por herencia."* (Bastardillas nuestras.) Véanse también *P. R. Ry., Lt. & P. Co.* v. *Corte de Distrito*, 38 D.P.R. 340, 342; *Sosa* v. *Sucn. Morales*, 58 D.P.R. 360, 363. En similares términos debemos expresarnos respecto al derecho a iniciar la acción de filiación.

---

[7] De salir victorioso en este caso, el demandante tendrá derecho a llevar como apellido materno el de Torréns y a heredar a Torréns Díaz por representación. Véanse los artículos 127 y 887 del Código Civil, ed. 1930, según este último fué enmendado por la Ley 446 de 14 de mayo de 1947, pág. 945.

No hemos hallado sentencia alguna del Tribunal Supremo de España en que se resuelva de lleno una cuestión idéntica a la que ahora discutimos. Sin embargo, aunque en la dictada por dicho Tribunal el 24 de febrero de 1917, 139 Jur. Civ. 436, se discute una cuestión algo distinta a la aquí envuelta, en él se llega a una conclusión enteramente aplicable al caso de autos. La cuestión que allí se debatía era si unos abuelos podían proseguir la acción de filiación iniciada por sus hijos en beneficio de una nieta de aquéllos. Se resolvió "que el texto del artículo 137 del Código Civil, si bien se presta a discurrir acerca de su sentido jurídico con diverso criterio, rectamente aplicado no ha debido entenderse tan mecánicamente como lo hace el tribunal sentenciador, porque al disponer literalmente que las acciones pueden ejercitarse en vida de los presuntos padres, y que de haberse muerto uno de ellos o los dos durante la menor edad del hijo sean deducidas por éste; tales frases, si dan a conocer cierto silencio de redacción en el precepto, *no se oponen a la transmisibilidad de la acción de filiación a los supervivientes*, como no se admita una interpretación sobrado restrictiva, desviando el sentimiento moral y jurídico en que se informa un estado personal de tanta trascendencia." (Bastardillas nuestras.) Esa sentencia del Tribunal Supremo de España ha sido interpretada por los tratadistas en el sentido de que la acción de filiación se trasmite a la muerte del presunto hijo, a los herederos de éste. Valverde, Tratado de Derecho Civil Español, vol. 4, pág. 457, nota 2; Castán Tobeñas, Derecho Civil Español, Común y Foral, Tomo Cuarto, sexta ed., revisada, 1944, pág. 26; Manresa, Código Civil Español, Tomo 1, sexta ed., 1943, pág. 648; Rodríguez Navarro, Doctrina Civil Tribunal Supremo (de España), Tomo 1, pág. 661. Por otra parte, el tratadista Scaevola, en el Tomo 3 de sus comentarios al Código Civil, ed. 1942, se expresa así a la página 417 de su obra:

"Pero así como no vemos inconveniente en que un abuelo reconozca a su nieto, muerto el hijo . . . así como también los

herederos del padre tienen . . . el derecho de impugnar el veri-
ficado por el mismo; no vemos razón alguna para privar a los
del hijo de un derecho más justo y más sagrado que el conce-
dido a los del padre, que al fin y al cabo se apoya en una con-
sideración de índole secundaria, como es el perjuicio que puedan
sufrir en la herencia . . . . ."

Manresa, en su obra y tomo citados, comentando el artículo
135 del Código Civil Español (igual al 125 del nuestro, ed.
1930) se pregunta a la pág. 637 "¿Quién puede pedir el
reconocimiento?" y se contesta *"Indudablemente sólo el hijo
natural y sus descendientes."* (Bastardillas nuestras.)
Luego a la pág. 648 se expresa así: "Puede suceder que el
hijo muera antes de los cuatro años de su mayor edad, o
que el documento que apoye su petición de reconocimiento se
descubra después de su muerte, ya ocurra ésta luego de haber
fallecido los padres, como supone el artículo o en vida de
ellos. *En todo caso corresponderá la acción a los descendien-
tes del hijo a quienes pueda interesar el reconocimiento,"*
(bastardillas nuestras) citando la sentencia del Tribunal
Supremo de España de 24 de febrero de 1917 a que antes
hemos hecho mención. Véanse además Sánchez Román,
Derecho Civil, Tomo 5, vol. 2, segunda ed., 1912, págs. 1050
y 1051 y Colin y Capitant, Derecho Civil, Tomo 1, segunda
ed., 1941, pág. 699. Consideramos que el criterio así enun-
ciado es enteramente correcto y que la acción que tenía Mar-
garita se trasmitió, a su muerte, a su único heredero.

### III

### PRESCRIPCIÓN

■■ Las acciones de filiación se rigen por la ley vigente
a la fecha del nacimiento del hijo. *Torres* v. *Sucn. Cautiño,*
70 D.P.R. 646; *Toro* v. *Ríos,* 68 D.P.R. 760; *Mercado* v.
*Sucn. Mangual,* 35 D.P.R. 422; *Méndez* v. *Martínez,* 21
D.P.R. 252; *Charres* v. *Arroyo,* 16 D.P.R. 816. Margarita
nació el primero de abril de 1893. El Código Civil Español

(para la Península, Cuba, Puerto Rico y Filipinas) vigente en aquel entonces en esta isla disponía en su artículo 135 que:

"El padre está obligado a reconocer al hijo natural en los casos siguientes:

"(1) Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"(2) *Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos directos del mismo padre o de su familia.*

"En los casos de violación, *estupro* o rapto, se estará a lo dispuesto en el Código Penal en cuanto al reconocimiento de la prole." (Bastardillas nuestras.)

Y el artículo 137 del mismo Código que:

"Las acciones para el reconocimiento de hijos naturales sólo podrán ejercitarse en vida de los presuntos padres, salvo en los casos siguientes:

"1. Si el padre o la madre hubiesen fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad.

"2. Si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozcan expresamente al hijo.

"En este caso, la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento."

Empero, en 1902 empezó a regir en Puerto Rico el Código Civil Revisado. Al final de éste aparecen las llamadas "Disposiciones Transitorias". La cuarta de ellas es al efecto de que:

"Las acciones y los derechos nacidos y no ejercitados antes de regir el Código Civil revisado, subsistirán con la extensión y en los términos que les reconociera la legislación precedente; pero sujetándose, en cuanto a su ejercicio, duración y procedimientos para hacerlos valer, a lo dispuesto en el Código revisado . . ."

Por el artículo 199 del propio Código Civil revisado se dispuso que:

"La acción para reclamar su filiación dura hasta dos años después de ser el hijo mayor de edad, y se trasmitirá a sus

herederos si falleciere en la menor edad o en estado de demencia. En estos casos tendrán los herederos cinco años de término para entablar la acción."

Para aquel entonces (1902) la acción de filiación que pudiera tener Margarita, nacida antes de regir el Código Civil Revisado, no había sido aún ejercitada, de manera que subsistía con la extensión y en los términos reconocídale por la legislación vigente a la fecha de su nacimiento, pero sujetándose, en cuanto a su ejercicio, a lo dispuesto por el artículo 199 del Código Civil Revisado. En otras palabras, cualquier derecho de acción que en cuanto a su filiación ella pudiera tener bajo la legislación existente en 1893 debía ser ejercitada en cualquier momento antes de haber expirado los dos años siguientes a su mayoridad. (Artículo 199 Código Civil, supra.) Como ella nació el año indicado esos dos años aún no habían expirado. Por ley de 9 de marzo de 1911, pág. 247 se derogó el artículo 199 del Código Civil Revisado y bajo un nuevo artículo—194 del Código Civil, ed. 1911—([8]) se modificó nuevamente el término para iniciar las acciones de filiación. Este nuevo artículo quedó redactado así:

*"Las acciones para el reconocimiento de hijos naturales, sólo podrán ejercitarse en vida de los presuntos padres, o un año después de su muerte,* salvo en los casos siguientes:

"1. Si el padre o la madre hubiesen fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad.

"2. Si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozcan expresamente al hijo.

"En este caso la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento.

" . . . . . . . ."

(Bastardillas nuestras.)

---

([8]) El artículo 194 del Código Civil, según fué enmendado por la indicada ley de 1911 figura ahora bajo el número 126 del Código Civil, ed. de 1930.

En 1911 Margarita no había llegado a su mayoridad, de forma que esta nueva ley enmendatoria del término para iniciar la acción de reconocimiento era aplicable a cualquier derecho que a ese respecto ella pudiera tener. En su consecuencia, como la aquí iniciada lo fué siete días después de muerto Torréns Díaz, la causa de acción que existió en favor de Margarita no había aún prescrito.(⁹) *Cf.* artículo 41 del Código de Enjuiciamiento Civil.

Toda vez que lo dicho por este Tribunal en *Fuentes* v. *Tribunal de Distrito*, 73 D.P.R. 959, es aplicable *mutatis mutandis* al presente, copiaremos en seguida lo que en el mismo se dice a las páginas 967 a 970 en relación con el derecho filiatorio de un hijo nacido en el año 1891:

"En la demanda de filiación se alega que el demandante Domingo Osorio nació el día 24 de mayo de 1891. Para esa fecha regía en Puerto Rico el antiguo Código Civil Español, el cual estuvo vigente en nuestra isla hasta el año 1902. Bajo el artículo 137 de dicho código la acción de filiación tenía que ser presentada en vida de los presuntos padres, o si hubiesen fallecido durante la menor edad del reclamante la acción podía establecerse dentro de los primeros cuatro años de su mayor edad. Ese artículo 137 fué sustituído en el año 1902 por el artículo 199 del Código Civil Revisado de 1902, que disponía que la acción para reclamar la filiación dura hasta dos años después de ser el hijo mayor de edad. . . . . De aplicarse a este caso exclusivamente el artículo 137 del antiguo Código Civil Español, vigente en la fecha del nacimiento de Domingo Osorio, o el artículo 199 del Código Civil Revisado de 1902, tanto la demanda original como la demanda enmendada presentadas por dicho Domingo Osorio estarían prescritas y la moción de sentencia sumaria debía haber sido declarada con lugar, ya que la acción de filiación no se presentó en vida de Manuel Fuentes Ramos y se presentó más de treinta y cuatro años después de haber llegado Domingo Osorio a su mayor edad. Sin embargo, en el año 1911, cuando el demandante tenía poco menos de veinte años de edad, nuestra Asamblea Legislativa enmendó el

---

(⁹) Domingo Torréns Díaz falleció el 26 de octubre de 1949 y la demanda en este caso fué presentada el 2 de noviembre del mismo año.

Código Civil en cuanto a términos prescriptivos de acciones de filiación, ya que por la Ley núm. 73 de 9 de marzo de 1911 se derogó expresamente el artículo 199 del Código Civil de 1902 y en su lugar se aprobó el artículo 194 que es igual al artículo 126 de nuestro Código Civil vigente, edición de 1930. Dicho artículo 126 de nuestro Código Civil, que ha seguido vigente desde el 9 de marzo de 1911 hasta la fecha actual, dispone que las acciones para el reconocimiento de hijos naturales sólo podrán ejercitarse en vida de los presuntos padres o un año después de su muerte, salvo algunos casos que no son aplicables al caso de autos. Dicho artículo 126 regía en la fecha del fallecimiento de Manuel Fuentes Ramos, o sea, el día 22 de marzo de 1946, según lo alegado en la demanda. De ser aplicable tal artículo 126 a las circunstancias de este caso, tendríamos que Domingo Osorio radicó su demanda original de filiación dentro del año posterior al fallecimiento de su alegado causante Manuel Fuentes Ramos.

"Ya este Tribunal Supremo ha resuelto que el artículo 126 del Código Civil, aprobado en virtud de la ley de 9 de marzo de 1911, no tiene aplicación a un caso de reconocimiento cuando la acción de filiación ya estaba prescrita en la fecha en que empezó a regir dicha ley de 9 de marzo de 1911. Citas. . . . . La regla legal arriba enunciada no es aplicable a las circunstancias y hechos de este caso, tal como dichos hechos y circunstancias surgen de las alegaciones y documentos sometidos a la corte inferior al resolver la moción de sentencia sumaria. Al aprobarse el artículo 126 del Código Civil el 9 de marzo de 1911 el alegado causante de Domingo Osorio, Manuel Fuentes Ramos, aún estaba vivo y, por lo tanto, el remedio que podía tener Domingo Osorio bajo las disposiciones del artículo 137 del antiguo Código Civil Español aún no había caducado. El día 9 de marzo de 1911 Domingo Osorio no había llegado aún a su mayor edad y, por lo tanto, el remedio o la causa de acción que podía tener Domingo Osorio bajo las disposiciones del artículo 199 del Código Civil Revisado de 1902 tampoco había caducado. Inmediatamente antes de aprobarse el artículo 126 el 9 de marzo de 1911 el aquí reclamante tenía un derecho potencial o una esperanza de reclamar su filiación dentro de los dos años posteriores a su mayor edad, que él cumplía el día 24 de mayo de 1912. El artículo 126 le concedió a Domingo Osorio por lo menos un derecho adicional y más amplio, o sea, el de poder radicar su acción de filiación dentro del año posterior

a la fecha del fallecimiento de su causante, aun si para esa fecha ya hubiesen transcurrido los dos años posteriores a su mayor edad que le concedía el artículo 199 del Código Civil Revisado de 1902. Al fallecer su alegado causante, el aquí reclamante Domingo Osorio tenía derecho a acogerse a las disposiciones del artículo 126 de nuestro Código Civil, no siendo aplicables a este caso los ya mencionados artículos 137 del antiguo Código Civil Español y el 199 del Código Civil Revisado de 1902, teniendo en cuenta especialmente que el artículo 126 al ser incorporado a nuestro Código Civil en virtud de la ley aprobada el 9 de marzo de 1911, no tuvo el efecto de revivir derechos ya caducados, sino que más bien consolidó y amplió la causa de acción disfrutada por ·el demandante en el caso de autos." *Cf. Sucn. Torres v. Cautiño,* supra.

## IV

### Prueba de Posesión de Estado

██ En relación con la posesión de estado de Margarita, el tribunal a quo hizo constar en su opinión las siguientes conclusiones de hechos:

"El causante Domingo Torréns Díaz y Candelaria Escapa, madre hoy también fallecida de Margarita Escapa, sostuvieron relaciones amorosas allá para el año 1892 siendo ambos solteros y sin impedimento legal alguno para contraer matrimonio entre sí. Candelaria quedó encinta y el día 1 de abril de 1893 dió a luz una niña a quien se le puso el nombre de Margarita y quien luego fué la madre del demandante según se deja consignado en el apartado 1. A los pocos días de nacida Margarita Escapa fué procesado Domingo Torréns Díaz ante la audiencia de lo criminal de la ciudad de Mayagüez por delito de estupro en la persona de dicha Candelaria Escapa pero seguido el proceso hasta su conclusión fué dicho procesado absuelto por no estar corroborada la declaración de la perjudicada en cuanto a la paternidad de su hija según fallo dictado el día 22 de diciembre de 1893.

"No obstante el referido fallo absolutorio Domingo Torréns Díaz se llevó luego a Candelaria Escapa a vivir con él y ambos vivieron juntos, como marido y mujer, durante algunos años teniendo consigo y en su compañía, como hija de ambos, a la menor Margarita Escapa. Ésta disfrutó desde entonces y se

halló durante el resto de su vida en la posesión constante y continua del estado de hija natural de dicho Domingo Torréns Díaz, justificada por actos directos de éste. A este respecto la prueba demuestra satisfactoriamente que durante todo el tiempo que Torréns y la madre vivieron juntos aquél tenía y atendía a la niña como su hija; que la sacaba a pasear en su compañía y la presentaba a sus amigos y relacionados y les decía que era su hija; que Margarita llamaba públicamente a Torréns 'papá' y éste la llamaba 'hija'; que tal situación continuó aún después que Torréns dejó de vivir con Candelaria Escapa y hasta que Margarita se casó a disgusto de él con el padre del demandante el día 25 de agosto de 1917; que no obstante el enfriamiento causado por el matrimonio de Margarita, Torréns continuó tratándola públicamente como su hija y satisfaciendo algunas de sus necesidades; que específicamente allá para los años 1922 a 1923 Torréns intervino con un cabo de la policía insular para que no se denunciase a Margarita diciéndole que intervenía porque era su hija; y que luego de nacido el demandante lo cargaba en brazos y lo acariciaba y aconsejaba a Margarita que lo cuidase bien. Estos hechos y otros detalles y circunstancias que surgen de la prueba demuestran, sin lugar a dudas, que Torréns siempre tuvo a Margarita Escapa como su hija y que ésta fué públicamente conocida como tal."

Hemos leído cuidadosamente y con el mayor detenimiento la prueba oral y documental aducida por las partes. El ligero conflicto existente en ella fué dirimido por el tribunal sentenciador. Éste era el llamado a así hacerlo. Nuestra lectura de la extensa transcripción de evidencia nos convence de que dicho tribunal estuvo plenamente justificado en sus conclusiones y de que no erró al dirimir el conflicto en la forma en que lo hizo. Véanse *Peña* v. *Sucn. Blondet*, 72 D.P.R. 9; *Toro* v. *Ríos*, supra; *Bianchi* v. *Bianchi*, 67 D.P.R. 594; *Meléndez* v. *Cividanes*, supra; *Cruz* v. *Carrasquillo*, 61 D.P.R. 435; *Vázquez* v. *Sucn. Boyrié*, 52 D.P.R. 856; *Colón* v. *Sucn. Tristani*, 44 D.P.R. 171; *Guadalupe* v. *González*, 34 D.P.R. 669.

*No habiéndose cometido los errores señalados, debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Belaval no intervino.